E. B. RATHBUN v. W. A. BERRY *et al.*

CHATTEL MORTGAGE, *Void as against Creditors of Mortgagor.* Where there is a stipulation contained in a chattel mortgage authorizing the mortgagor to sell the mortgaged property without limitation, and no provision is made as to what shall be done with the proceeds, and there is no agreement between the parties, outside of the mortgage, limiting the sale or sales of the mortgaged property, or providing what shall be done with the proceeds, such mortgage is void as against the creditors of the mortgagor; and although there is

another stipulation contained in the mortgage, providing that the mortgagee may take the possession of the mortgaged property whenever he shall deem himself unsafe or insecure, still if he takes the possession of the mortgaged property under this stipulation, without the consent of the mortgagor, he does not thereby render the mortgage valid as against the mortgagor's creditors.

### *Error from Osborne District Court.*

REPLEVIN. Judgment for defendants, *Berry* and others, at the May term, 1889. The plaintiff, *Rathbun*, brings the case to this court. The important facts are stated in the opinion.

*R. G. Hays,* for plaintiff in error:

This note being still due and unpaid, the plaintiff, both by his mortgage and by virtue of taking possession of the goods, had acquired a valid and subsisting lien upon the entire stock of merchandise turned over to him by Mrs. Andrews, as agent for her husband. The court sustained the demurrer to the evidence, upon the theory that, because the mortgage provided that it should include all goods thereafter bought to replenish or replace those goods that had been sold, such mortgage was absolutely and entirely void.

We think this to be entirely erroneous. There was no evidence tending to show that any goods had been purchased or placed in the stock from the date of the execution of the mortgage until the time the plaintiff in error took possession thereunder. Nor is there any evidence which in the least tends to show that there were any sales of merchandise by the mortgagor, Andrews, from the date of the execution of said mortgage up till the time the plaintiff took possession thereof; and for that reason alone the demurrer should have been overruled in the case; but even if the theory of the trial court and the attorneys of the defendants is true, that the mortgage provided for a sale, or if it was contemplated that a sale of goods should be made from the stock, by its terms, still we think that, under the decision of this court in the case of *Cameron v. Marvin,* 26 Kas. 612, such demurrer

was erroneously sustained. If there was any evidence proving, or tending to prove, all the allegations of plaintiff's petition, the court should not weigh such evidence on the demurrer, but ought to have submittted the same to the jury.

*A. H. Ellis, E. S. Ellis,* and *F. T. Burnham,* for defendants in error:

We contend that the trial court committed no error, and that its judgment should be affirmed, for the following reasons, viz.: (1) Because there is not a particle of evidence that the goods replevied in this action were the goods attempted to be conveyed by mortgage by Andrews to Rathbun, and no effort was made by the plaintiff on the trial to identify the goods taken as those included in the alleged chattel mortgage under which the plaintiff in error claims; (2) because the mortgage was void upon its face, in that it specifically provided that all goods thereafter purchased should be subject to the lien of the mortgage, and because it provided for a sale of the mortgaged property by the mortgagor and contained no provision as to the disposition of proceeds, thus allowing the mortgagor to sell the stock and use the money derived therefrom for his own benefit; and there was no verbal agreement that the proceeds of sales should be applied toward the payment of the mortgage debt; (3) because the mortgage, being absolutely void on its face as to creditors, could not be transmuted into a valid pledge unless the property were *voluntarily* delivered by the mortgagor to the mortgagee for that purpose, and there is no evidence showing that Mrs. Andrews had any authority to act as the agent of the mortgagor, and make a pledge of the goods as security for his debts, nor is there any evidence showing or tending to show that she had any authority to make any disposition of the goods whatever.

As plaintiff did not see fit to introduce evidence identifying the goods, this court will not indulge in any presumptions in his favor, but, on the contrary, it will be presumed that

47 — 49 KAS.

the trial court committed no error. *Bainter v. Fults*, 15 Kas. 323; *Lucas v. Sturr*, 21 id. 480, and cases cited.

In support of the proposition that this mortgage is void upon its face, it seems almost unnecessary to cite any authorities, but we call attention to a few out of the many cases which appear to have settled this question emphatically. *Robinson v. Elliott*, 22 Wall. 513; *Leser v. Glaser*, 32 Kas. 546; *Implement Co. v. Schultz*, 45 id. 52; *Blakeslee v. Rossman*, 43 Wis. 116.

There are some authorities which hold that even where a mortgage is void as to creditors for any reason, still, if before the general creditors of the mortgagor obtain any lien upon the property the mortgagor *voluntarily* delivers possession of the property to the mortgagee, such a delivery will cure the defects in the mortgage, and will be held to constitute a valid pledge; and this is probably the rule in Kansas, although many respectable authorities hold otherwise. At the trial of the case in the court below, the plaintiff relied solely upon the case of *Cameron v. Marvin*, 26 Kas. 626, and appears to be still depending on the same case, as it is the only one cited in his brief; but we submit that the facts in that case were entirely dissimilar from those in the case at bar, and that case does not in any degree support the contention of the plaintiff in error herein. There it was admitted, and the court so found, that the mortgagor voluntarily and in person delivered the possession of the property to the mortgagee, and Mr. Justice VALENTINE, in delivering the opinion of this court, was careful to make a distinction between that case, where the possession was voluntarily delivered, and a case like the present one, where the possession was *taken* by the mortgagee, without the consent or even knowledge of the mortgagor.

Neither does the present case come within the other rule established by this court, in the case of *Gagnon v. Brown*, 47 Kas. 83, to the effect that, if a mortgagee takes possession of the mortgaged property before any other right or lien attaches,

his title under the mortgage is good against everybody, and it is immaterial whether the mortgagee takes possession *in invitum*, or is voluntarily put in possession by the mortgagor; for this rule applies to those cases, and those cases only, where the mortgage is not void upon its face, but is void as to third parties until possession is taken, by reason of some neglect or laches on the part of the mortgagee, such as, for instance, a failure to file for record. It has never been held that a mortgagee can take forcible or involuntary possession of property covered by a mortgage which is void upon its face, and thereby place himself in any better position than he was in before thus obtaining the custody of the property.

As to the distinction between a *voluntary delivery* and a taking of possession of mortgaged property, see Jones, Chat. Mortg., § 178.

Had Mrs. Andrews authority to make a voluntary delivery of possession of the goods to the mortgagee, and could she make a valid pledge of the property of her husband to secure his debts? Her agency cannot be presumed; but, on the contrary, the evidence to establish agency of the husband for the wife, or the wife for the husband, must be stronger and more satisfactory than that required between independent parties. *Eysho v. Capello*, 61 Mo. 578; Mechem, Agency, § 401; *McLaren v. Hull*, 26 Iowa, 297. See also 9 Am. & Eng. Encyc. of Law, p. 839; *Benjamin v. Benjamin*, 15 Conn. 347–354; *Sawyer v. Cutting*, 23 Vt. 486; *Leeds v. Vail*, 15 Pa. St. 185; *Manufacturing Co. v. Morgan*, 29 Kas. 519; *Butts v. Newton*, 29 Wis. 632–638; *Savage v. Davis*, 18 id. 608; *Vescelius v. Martin*, 18 Pac. Rep. (Colo.), 338.

In view of the facts in this case and the authorities cited, it seems clear that there was no valid pledge of the goods, for to constitute a pledge there must be an actual delivery of the property to the pledgee, and it goes without saying that this delivery must be made by the pledgor or a person duly authorized by him to make such delivery. *Raper v. Harrison*, 37 Kas. 243.

*E. F. Robinson*, for plaintiff in error in reply:

Are the three claims of defendants in error supported by the law under the facts of this case? We think not. When plaintiff found the wife of the mortgagor in possession of the goods, and especially as she often worked in the store, why should he go to the useless expense of legal process in taking possession of the stock? This question has added force, when we remember that his mortgage was of record, and that the party complaining had not only constructive knowledge thereby, but also had actual knowledge of plaintiff's lien, as had also the attorney instituting the suit. As to the right of mortgagor to sell the goods, it is only an implied one, from the exception in the mortgage, that this mortgage should cover any and all goods to replace any sold; and there is certainly no evidence warranting the construction that the mortgagor had any right to sell the goods and appropriate the proceeds to his own use. As supporting the views herein expressed, the following, out of the great list of authorities, are cited: *Greeley v. Reading*, 74 Mo. 309; *Morris v. Swift*, 15 Nev. 215; *Frank v. Miner*, 50 Ill. 444; *Chipron v. Fickart*, 68 id. 284; *Nash v. Norment*, 5 Mo. App. 545; *Clute v. Steele*, 6 Neb. 335; *Smith v. Stern*, 17 Pa. St. 360.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought in the district court of Osborne county on November 27, 1888, by E. B. Rathbun against W. A. Berry, The Beloit Milling Company, a corporation, George W. Bittman, O. B. Taylor, and W. N. Todd, copartners, doing business as Bittman, Taylor & Co., John Jackson and Andrew Jackson, copartners, doing business as Jackson Bros., to recover certain goods, wares and merchandise alleged to be unlawfully detained by the defendants from the plaintiff, and of the aggregate value of $563.98. The plaintiff claimed the property under a chattel mortgage executed to him on November

21, 1888, by James F. Andrews, to secure a promissory note then given for $550. The defendants claimed the property by virtue of the levy of certain attachments upon the property as the property of Andrews. The defendant Berry was the officer that levied the attachments, and the other defendants were the attaching creditors. The mortgage was deposited in the office of the register of deeds on November 24, 1888; and, so far as it is necessary to quote it, it reads as follows:

"This mortgage is hereby made to cover any and all goods that may be purchased from time to time to replace goods sold that are covered by this mortgage.

"*Provided, however,* That if said debt and interest be paid as above specified, this sale and transfer shall be void; that the above-described property is now, and (except as hereinafter provided) shall remain in the possession of the said first party at Downs, township of Ross, Osborne county, Kansas, until default be made in the payment of the debt and interest as aforesaid, or some part of it.

"*Provided always,* That in case of a sale or disposal of any of said property, or attempt to dispose of the same, or a removal or attempt to remove the same or any part thereof from said county, or an unreasonable depreciation in the value, or if for any other cause the said party of the second part shall deem itself unsafe or insecure, then the whole of said debt and interest thereon shall forthwith become due and payable, and the said party of the second part, or its authorized agents, may take said property, or any part thereof, into its own possession, and sell the same at public or private sale, and out of the proceeds of such sale retain the whole of such debt and interest thereon, and all necessary costs incurred in finding and caring for said property, and return the surplus to said party of the first part; and if from any cause said property shall fail to satisfy said debt and interest and costs incurred, said first party agrees to pay the deficiency. In case of conditions broken, said property or any part thereof may at the option of the mortgagee be taken to Downs, Osborne county, Kansas, or to any place in the county where the same may be at the time of taking possession thereof, and there be advertised and sold."

The case was tried before the court and a jury, and the

plaintiff, on his own behalf and as a witness, gave the following, among other testimony:

"Ques. When you left the goods in Andrews's possession, what did you intend that he should do with them? Ans. I supposed that he was going to sell out and put his money in the bank and meet this obligation; that was my intention; I don't know as there was anything said about it. I have no recollection of anything being said as to what he was to do with them at all.

"Q. You had no talk about it whatever? A. No.

"Q. You expected he would go on and sell them out at retail as he had been doing? A. Yes, sir."

It also appears from the evidence that, prior to the execution of the mortgage, Andrews was engaged in a mercantile business in the city of Downs, in Osborne county. He with his family resided in the upper story of the building in which he did business, and his goods were kept in the lower story thereof. These goods constituted the property which Andrews mortgaged to the plaintiff. The plaintiff and Andrews were brothers-in-law, having married sisters. The note secured by the mortgage was given for $100 then loaned and for a preëxisting debt. Andrews retained the possession of the goods. On November 24, 1888, Andrews left the country, and has never returned. On the next day, which was Sunday, the creditors of Andrews demanded of the plaintiff that he should execute to them a bill of sale for the goods, but he refused, and on the evening of that day he went to the residence (or late residence) of Andrews, for the purpose of obtaining the possession of the goods. Mrs. Andrews was at home, and in the story above the place where the goods were kept, which latter place was called the "store." He procured a key to the "store" from Mrs. Andrews, with the intention, as he informed her, of taking the possession of the goods. He then went down to the "store," unlocked the front door thereof, stepped inside, stayed there for a few minutes with the intention of taking the possession of the goods, and then went out and locked the door behind him. A few hours later, and after midnight, the aforesaid orders of attachment

were levied upon the goods, and the officers took the possession of them, and on the next day the plaintiff commenced this action. These are substantially all the facts of the case that are of any importance.. The defendants demurred to the plaintiff's evidence, upon the ground that it did not prove any cause of action, and the court below sustained the demurrer and rendered judgment accordingly; and the plaintiff, as plaintiff in error, brings the case to this court for review.

The only question presented to this court is, whether the aforesaid chattel mortgage is void as against the mortgagor's attaching creditors. Under section 2 of the statute of frauds, every transfer of property, real or personal, made with the intent to hinder, delay or defraud creditors, is void. It is also true that a chattel mortgage generally has a tendency to hinder and delay the creditors of the mortgagor in the collection of their claims; and it is also a general rule of law that every person is presumed to intend the natural and probable consequences of his own voluntary acts. But where a chattel mortgage is executed in good faith and for the purpose of securing a real debt, and the terms are reasonable, it will be held to be valid, although it may have a tendency to hinder or delay the creditors of the mortgagor in the collection of their claims. The present mortgage contains the following stipulation:

"This mortgage is hereby made to cover any and all goods that may be purchased from time to time to replace goods sold that are covered by this mortgage."

This stipulation, it is said in the brief of defendants in error, was in writing, while very nearly all the remainder of the mortgage was in print, a blank printed chattel mortgage having been used in drawing up the mortgage executed. This statement of counsel has not been denied, and it is probbly true, although there is no direct evidence in the record tending to show whether the stipulation was in writing or not, or what portion of the mortgage was in writing and what not. The stipulation, however, as found in the record brought to this court, is underscored, and, as we understand, the court

below held that the mortgage was void upon the ground that this stipulation rendered it void. Of course the court below had the mortgage before it and knew what part of it was in writing and what was not. Now, for the purpose of upholding and sustaining the decision of the court below, we think that it should be held that this stipulation was in writing, and that the other stipulations in the mortgage which might tend to contradict it or modify it should be held to be in print. And further, this stipulation is an extraordinary one, while the other stipulations in the mortgage are common and ordinary stipulations, such as are generally found in chattel mortgages. And if we should hold that this stipulation was *written in the mortgage by the parties,* then we must consider that it expressed their exact intention, and that any other stipulations in the mortgage only in print, and which might not be in harmony with it, did not express their true intention. And construing the stipulations in this manner, it would seem to require that the mortgage should be held to be void. We think that by unavoidable implication this stipulation authorized the mortgagor to sell and dispose of the goods—not merely at retail, or in the ordinary course of trade or in the ordinary course of business, which would simply be an authority to release from the incumbrance of the mortgage only a small portion of the goods from time to time—but it gave to the mortgagor an authority to sell and dispose of the whole of the property at once, or in the lump, or in any sized lots, as he might choose. There is in fact no limitation of any kind or amount upon the sale. Besides, the mortgage does not in fact provide what should be done with the proceeds of the sale when the goods are sold. There is no stipulation that the mortgagee should have the proceeds, or that they should be kept or deposited for his benefit. All was left with the mortgagor, and he had the power to do as he chose.

It is true the stipulation contemplates that other goods might be purchased to replace the goods sold, but the purchase of other goods was not obligatory. Of course any sale

of any portion of the mortgaged goods would destroy the mortgage incumbrance to that extent, and a sale of all the mortgaged property would completely destroy the mortgage. A power given to the mortgagor to sell the whole of the mortgaged property would really render the mortgage nugatory, and the mortgagor would still remain substantially the owner of the property. Such a power in any mortgage would be inconsistent with any supposed incumbrance granted by the mortgage, and a mortgage granting such a power should be held to be at least *prima facie* if not absolutely void. There is nothing to this case, either in the mortgage or as shown by the extrinsic evidence, that tends to explain how the parties intended that the sale or sales of the mortgaged property should be made, or what should be done with the proceeds. The plaintiff, by his own parol testimony, showed that he understood that the *mortgagor* would "sell out" the goods, or sell them at retail, as *he* had been doing, "and put *his* money in the bank and meet this obligation;" but, so far as is shown, there was no agreement or understanding *between the parties* or on the part of the mortgagor, other than that shown by the mortgage, as to how the sale or sales should be made or what should be done with the proceeds. Hence, under the stipulations of the mortgage and the parol testimony, we must assume that the mortgagor, while in the possession of the mortgaged property, had the absolute control over the same, and the absolute right to sell it as he chose, and the absolute control over the proceeds.

But it is claimed that the plaintiff as mortgagee obtained the possession of the goods before any of the same were sold, and that such possession cured all irregularities and rendered the mortgage valid. The possession, however, was not procured by any *delivery* of the goods by the mortgagor or *with his consent.* The plaintiff *took* the possession of the property without the mortgagor's consent and only by virtue of the authority given by his *void* mortgage — not void because it had not been deposited with the register of deeds; not void because of a want of notice to the mortgagor's creditors or

subsequent purchasers or incumbrancers; not void because of an insufficient description of the mortgaged property; not void because of a want of a renewal affidavit, and not for any other mere irregularity which was not in contravention of good morals or public policy, but void because of a stipula- tion contained in the mortgage which must be considered as against public policy, if not in contravention of good morals, and as tending to hinder and delay creditors in the collection of their just claims, and thus hindering and delaying of

creditors without any good reason therefor, and

Chattel mort- gage, void as against credit- ors of mort- gagor.

providing for such a disposal of the property as must necessarily render the mortgage itself sub- stantially nugatory. What the effect of the *de- livery* of the possession of the mortgaged property by the mortgagor to the mortgagee or a taking of the possession of the property by the mortgagee with the consent of the *mort- gagor* would be, it is wholly unnecessary in this case to de- cide, for nothing of that kind took place in this case. It was not shown that the mortgagor ever gave his consent other- wise than by the mortgage. There is no evidence tending to show that the mortgagor's wife had any authority from the mortgagor to deliver the property to the mortgagee, and it cannot be supposed that she had any such authority merely because she was his wife. A taking of the possession of mortgaged property by the mortgagee, to be sufficient to cure all irregularities and to make the mortgage valid, must be either under the authority of a written instrument valid and sufficient for that purpose, or under some valid parol consent of the mortgagor. Such was not this case.

We have given this case a great deal of attention, and carefully considered it in all its aspects. We have also ex- amined many authorities, with a hope that our minds might become thoroughly satisfied, but still we have great doubts. Among the decisions of our own court which we have exam- ined are the following: *Savings Bank v. Sargent,* 20 Kas. 576; *Frankhouser v. Ellett,* 22 id. 127; *Dayton v. Savings Bank,* 23 id. 421; *Cameron v. Marvin,* 26 id. 612; *Muse v.*

*Lehman,* 30 id. 514; *Leser v. Glaser,* 32 id. 546; *Dolan v. Van Demark,* 35 id. 304; *Howard v. Rohlfing,* 36 id. 35.7; *Gagnon v. Brown,* 47 id. 83. See also, 3 Am. and Eng. Encyc. of Law, 196, 197; Jones, Chat. Mortg., §§ 164, 178, and the whole of chapter 9, including §§ 379 to 425.

We think the conclusions which we have reached in this case are in harmony with the spirit of all the decisions heretofore rendered by this court, and are also in harmony with the most of the decisions rendered by other courts. Many decisions of other courts, however, may be found with which the foregoing conclusions are not in harmony. Therefore, while we have very grave doubts as to the correctness of the decision rendered by us in this case, yet, taking into consideration the peculiar facts of this case, with all the reasons for and against the present decision, and taking into consideration all the decisions of other courts sustaining or opposing this decision, we are inclined to think that the decision is correct, and therefore the judgment of the court below will be affirmed.

All the Justices concurring.