SMITH, HEDDENS & CO. v. J. W. EPLEY *et al.*

CHATTEL MORTGAGE, *Void as to Creditors of Mortgagor.* Where a merchant who has given a chattel mortgage for $1,520 upon a small stock of goods, valued at about $3,000, and is permitted by the mortgagor to remain in possession of the stock as the owner, and there is no provision in the mortgage as to what the mortgagor shall do with the proceeds of the sales thereof, and the mortgagor, with the permission of the mortgagee, continues for many months to sell the stock of goods at retail in the usual course of business, is permitted to use the proceeds of the sales in any manner he pleases, without regard to the mortgage debt, and does not apply any part of the proceeds to pay the debt secured by the mortgage, the mortgage is void as to the creditors of the mortgagor, and also void as to a creditor who obtains a lien thereon by a subsequent chattel mortgage to secure his claim, although he has notice at the time of accepting his mortgage of the existence of the prior void mortgage.

*Error from Greenwood District Court.*

ON the 8th of January, 1889, Henry Beck sold a general stock of merchandise, worth about $3,000, located in the Beck building, in Quincy, Greenwood county, to J. W. Epley and C. M. Shaw, partners as Epley & Shaw. On the 4th of March, 1889, Epley & Shaw made a chattel mortgage on this merchandise to Henry Beck to secure a note for $1,520, a part of the purchase-money remaining unpaid. Beck's note was not due until January 8, 1890. In March, 1889, Epley bought out the interest of his partner, Shaw, and paid him $300 for the same from the proceeds of the

sale of the goods. After Epley purchased the inter-
est of his partner, Shaw, he continued in possession
and conducted the business until November 25, 1889,
of that year, running the business as a retail store.
He purchased new goods in large amounts during that
time, mingling the same with the goods of like kind
mortgaged to Beck, with the knowledge of Beck and
without objection from him. During this time Epley
sold out of the store over $3,000 worth of goods, but
made no payment to Beck, made no account to him,
and was not requested to do so, and there was no
agreement between the parties that he should do so.
The mortgage on the 4th of March, 1889, from Epley
& Shaw to Beck contained the following provisions :

"The property sold is to remain in possession of
said parties of the first part until default be made in
the payment of the debt and interest aforesaid, or some
part thereof; but in case of a sale or disposal or at-
tempt to sell or dispose of the same, or a removal of
or attempt to remove the same from Beck's store
where it now is, or an unreasonable depreciation in
the value, or if from any cause the security shall be-
come inadequate, the said party of the second part may
take such property into his own possession, and upon
taking said property into his possession, either in case
of default or as above provided, said party of the
second part shall sell the same at public auction or
private sale, and after satisfying the aforesaid debt
and interest thereon and all necessary costs, charges
and expenses incurred, out of the proceeds of the sale,
he shall return the surplus to said parties of the first
part or their legal representatives ; and if from any
cause said property shall fail to satisfy said debt and
interest aforesaid, said parties of the first part hereby
agree to pay the deficiency."

This mortgage was filed for record on March 28,
1889. On November 20, 1889, Epley executed to
Smith, Heddens & Co. a chattel mortgage on the

stock of merchandise he then had to secure them
the payment of $600, being a balance due them for
goods sold to him by them at various times prior
thereto and by him placed in the store. This mort-
gage was filed for record November 21, 1889. Before
the mortgage was executed, Smith, Heddens & Co.'s
agent having charge of the collecting of their account
was informed by Epley of Beck's mortgage. On the
23d day of November, 1889, *Smith, Heddens & Co.*
commenced their action of replevin against *J. W.
Epley* to recover possession of the mortgaged prop-
erty from him, and on the same day the sheriff took
the property from Epley, and on the 25th delivered
the same to plaintiffs under the writ in that action.
On December 14, 1889, Epley filed his answer to
the action, and on the 14th day of January fol-
lowing Henry Beck filed an answer or interplea in
which he claimed "one-half of entire portion" of
the goods mortgaged to him and taken in replevin
against Epley. To this answer was attached a copy
of the mortgage of Shaw & Beck. On the 23d day
of January, 1890, the case was called for trial in the
district court of Greenwood county, and Epley with-
drew his defense. The plaintiffs demanded judgment
on the pleadings. The court denied this and allowed
Beck to amend his answer. The court allowed sub-
sequently further amendments by interlineations.
Plaintiffs renewed their demand for judgment on the
pleadings, which was refused, and plaintiffs then filed a
reply to the amended answer of Beck, being a general
denial and specially denying that Beck had any right to
the property, or that his mortgage had ever been filed
for record, or that the property taken in replevin or any
part thereof was the same as that described in Beck's
alleged mortgage, and setting up that Beck's mort-

gage was fraudulent and void. A trial was had by a jury, and the jury made special findings of fact which they returned with their verdict. The verdict was to the effect that Beck was entitled to a certain portion of the property, and that plaintiffs were entitled to the residue. Plaintiffs asked the court to render judgment for them against Beck and Epley notwithstanding the verdict, which motion was taken under advisement by the court till May 7, 1890, at which time the motion was overruled. Plaintiffs then presented their motion for a new trial, which was overruled. Thereupon the court rendered judgment in favor of Beck for the possession of the portion of the property mentioned in the verdict, or for its value if a return could not be had and for costs. The jury made the following, among other special findings of fact:

"6. Did J. W. Epley, after he became the sole proprietor, continue to sell said stock of goods in the usual course of trade? Ans. Yes."

"9. Is it not a fact that said Henry Beck had knowledge of the selling of said goods, and neither made objection nor demanded or asked for any of the said proceeds? A. Yes.

"10. Is it not a fact that all of the proceeds of the sales of said goods were used by said J. W. Epley or his partner, while he had one, in carrying on their business generally, to bear their personal and business expenses? A. Yes.

"11. Is it not a fact that a part of the said proceeds were used by J. W. Epley in the purchase of other goods to be placed in said store? A. Yes."

"13. Did Mr. Beck know of these purchases of new goods? A. Yes.

"14. Did he object to the same? A. No.

"15. Did Mr. Beck trade with Mr. Epley? If so, did he pay cash or have it credited on his indebtedness? A. Yes. He paid cash.

"16. Is it not a fact that Mr. Beck never objected to the manner of doing business by J. W. Epley, and the manner of using the proceeds of the sales made by him? A. Yes.

"16a. Is it not a fact that J. W. Epley had full possession and control of the proceeds of all sales made of goods, with power to use the same in any manner he pleased? A. Yes.

"17. Was there any agreement between Mr. Beck and Epley that the proceeds of the sales of said goods should be paid to Mr. Beck? A. No.

"18. Is it not a fact that Mr. Epley used the same just as he pleased and in any manner his wishes might dictate and at times for the payment of his private expenses? A. Yes.

"19. Is it not a fact that J. W. Epley purchased the interest of his partner, C. M. Shaw, for about $300? A. He paid in $300 and drew out $300.

"20. Is it not a fact that he paid Shaw for said interest from the sales of goods sold in the usual course of trade? A. Yes."

"22. Is it not a fact that all cash received for the sales of goods was indiscriminately placed in the cashdrawer, regardless of what goods produced said cash? A. Yes."

"24. Was J. W. Epley in possession of and selling said goods mortgaged to Henry Beck, as the owner thereof? If not, state in what capacity he was so acting. A. Yes.

"25. Was J. W. Epley in possession of and selling said goods mortgaged to Henry Beck as the agent of Beck? A. No."

The plaintiffs bring the case here.

*Geo. O. Blake,* for plaintiffs in error; *Kelley & Lamb,* of counsel.

*W. R. Biddle,* for defendant in error Beck.

The opinion of the court was delivered by

HORTON, C. J.: The principal question presented in this case is whether the chattel mortgage executed

by Epley & Shaw to Henry Beck is void as against the creditors of J. W. Epley. A few days after the execution of the mortgage, Epley purchased the interest of his partner, C. M. Shaw, in the mercantile business in which they were engaged. From that time to the 23d of November, 1889, when the goods were seized under the mortgage to plaintiffs, Epley was in the possession thereof as the owner and sold the same at retail in the usual course of business. With the knowledge of Beck, and without any objection from him, Epley had the power to use the proceeds of the sales of the mortgaged property in any manner he pleased — even for the payment of his private expenses. There was no agreement between Epley and Beck that any of the proceeds should be paid to the latter. No part of the sales were applied to pay the indebtedness secured by the chattel mortgage, or for the benefit of the mortgagee. In fact all sales were made by Epley in his own behalf and at his own discretion and with control of the proceeds reserved to himself. We have ruled that —

"A power given to the mortgagor to sell the whole of the mortgaged property would really render the mortgage nugatory and the mortgagor would still remain substantially the owner of the property. Such a power in any mortgage would be inconsistent with any supposed incumbrance granted by the mortgage." (*Rathbun v. Berry*, 49 Kas. 745. See, also, *Leser v. Glaser*, 32 id. 546; *Implement Co. v. Schultz*, 45 id. 52.)

As the business of J. W. Epley, after the giving of the mortgage to Beck, was carried on for about eight months the same as before, as the proceeds of the sales were used by Epley as he saw fit for the purchase of new goods, for his personal expenses, without any regard to the mortgage debt, with full knowledge

and consent of Beck, the mortgage is void as to the plaintiffs and other creditors. The reasons for the invalidity of the Beck mortgage are fully stated in the opinions in *Rathbun v. Berry*, supra, and *Implement Co. v. Schultz*, supra, in view of the special findings of fact of the jury.

It is suggested that the plaintiffs are not attaching creditors, and that as they took their mortgage with notice of the prior mortgage, the Beck mortgage is not void as to them. It is true that they had notice of the prior mortgage when they accepted their mortgage to secure their claim. Instead of taking a lien by attachment they preferred a mortgage-lien, but when they accepted their mortgage they had notice that J. W. Epley had possession of the mortgaged property as the owner thereof, had the absolute control over the same, the absolute right to sell it as he chose, and the absolute control over the proceeds. They knew therefore that the Beck mortgage was void, and no lien upon the stock of goods.

A motion has been filed in this case to dismiss upon the ground that the case-made was not signed and allowed within the time limited by the order of the court. The record does not sustain the allegations of the motion. The case-made seems to have been signed and settled according to the provisions of the statute in the presence of the attorneys of the parties after amendments to the case had been suggested by the defendants.

The judgment of the district court will be reversed, and the case remanded with direction to that court to render judgment upon the findings of fact in favor of the plaintiffs and against the defendants, J. W. Epley and H. Beck.

All the Justices concurring.