### A. L. HUMPHREY v. LEE MAYFIELD.
**No. 12,333.** ( 65 Pac. 234.)

SYLLABUS BY THE COURT.

CHATTEL MORTGAGE — *Stock of Merchandise — Invalid.* A chattel mortgage on a stock of merchandise, containing stipulations that the mortgagor shall continue in possession and may sell all of the stock, without limitation as to whether it shall be for cash or on credit, and which gives him the option to buy other goods to keep up the stock, without fixing any standard of value or amount to which the stock shall be kept, and which provides that the moneys derived from sales, over and above what is necessary for expenses and to keep up the stock, shall be turned over to the mortgagee, is inoperative and void.

Error from Linn district court; WALTER L. SIMONS, judge. Opinion filed June 8, 1901. Division one. Affirmed.

*Blue & Riggs*, and *W. R. Biddle*, for plaintiff in error.
*Snoddy & Snoddy*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : This was an action of replevin brought by A. L. Humphrey against Lee Mayfield, as sheriff, to recover a stock of merchandise which the sheriff had seized on executions issued against M. A. Yoakum and Mollie Yoakum. Humphrey's claim to the right of possession was based on a chattel mortgage executed by the Yoakums to Humphrey and which was filed for record. It purported to have been given as security for several promissory notes given by the Yoakums ·to Humphrey, aggregating $800, the first of which became due two years after the mortgage was executed and the last of which matured four years after the execution of the mortgage. The case was tried by the court without a jury, and the agreements

as to the facts eliminated all questions from the case except the single question, Was Humphrey's alleged mortgage a lien on the stock of goods? The validity of the lien was challenged upon two grounds—first, that the transactions between the Yoakums and Humphrey, including the mortgage itself, were not *bona fide*, but were fraudulent as against the creditors of the Yoakums; and another that the mortgage was inoperative and void because of conditions written on its face. Only a general finding was made by the court, and therefore it cannot be determined whether its judgment rests upon one or both of the grounds stated. But we think the case may be disposed of on the single ground that the conditions expressed on its face destroyed its validity.

The instrument was the ordinary form, the greater part of which was printed, but in it there was written, immediately after the description of the mortgaged property, the unusual provision that the Yoakums

"shall have the right to dispose of *any and all* of said stock and to purchase other goods to keep up said stock; but all moneys derived from the sale of goods over and above what is necessary for running expenses and to keep up said stock shall be turned over to the said A. L. Humphrey, until the said sum of $800, with all interest that shall accrue on it, shall be paid in full, and all goods bought to replenish the stock shall be the property of said A. L. Humphrey until the said notes and all interest is paid."

Following the written portion of the mortgage were the usual printed stipulations that in the event of a sale or an attempt to sell the mortgaged goods, or a removal of the same from the county, or an unreasonable depreciation in value, or if the security should become inadequate, or the mortgagee should deem himself insecure, he might take possession of the prop-

14—63 KAN.

erty and sell the same.   In this respect the provisions
of the mortgage were inconsistent and contradictory,
and the rule in such cases is that the written stipula-
tion shall prevail and be considered as expressing the
true intention of the parties.   (*Rathbun v. Berry*, 49
Kan. 735, 31 Pac. 679, 33 Am. St. Rep. 389.)   So con-
sidered, it must be held that the mortgage is inopera-
tive and void.   The mortgagor not only retained the
possession in himself, but by the provisions quoted he
reserved the right to sell the entire stock in a lump
for cash or on credit, as he might desire, and without
notice to or the further consent of the mortgagee.

It is true that the instrument contained a stipula-
tion that the mortgagor had the right to purchase
other goods and keep the stock up, but this was op-
tional with him, and no provision was made that he
should keep it up to any fixed standard, either as to
amount or value.   There was also a condition that
the moneys derived from the sale of goods, over and
above what was necessary to keep up the stock and to
pay the expenses of running the business, should be
turned over to Humphrey, but as the mortgagor was
not required to continue business in the usual way
and was at liberty to sell the whole stock without no-
tice to any one, there was but little restraint upon the
disposition of the money that might be derived from
a sale.   Whatever may have been the motive and pur-
poses of the parties to the mortgage, the reservations
to the mortgagor gave him substantially the same
control over the goods as he had before the mortgage
was made, and yet it served to fence off his creditors
for a period of four years.   He could sell the whole or
part of the stock as if it were his own, fill up the stock
with goods or not, at his option, sell for cash or credit,
as he might desire, and he had the opportunity to ap-

propriate the proceeds of a sale to his own benefit, ·if he chose such a course. The conditions of the mortgage gave him a fraudulent advantage over his creditors which the law does not sanction. This court has gone to the border line in sustaining mortgages on merchandise where the mortgagor remains in possession and carries on the business in the usual and ordinary way for the benefit of the mortgagee, but we do not feel warranted in extending the rule so as to include mortgages like the one in question.

Under the authority of *Rathbun v. Berry*, supra, it must be held that the stipulations in the instrument are so inconsistent with a mortgage, and so clearly tend to give the mortgagor a fraudulent advantage over his *bona fide* creditors, that it should be held to be void on its face and inoperative. (See, also, *Leser & Co. v. Glaser, Straus & Co.*, 32 Kan. 553, 4 Pac. 1026 ; *Smith v. Epley*, 55 id. 71, 39 Pac. 1016 ; *Richardson v. Jones*, 56 id. 501, 43 Pac. 1127, 54 Am. St. Rep. 594.)

It follows that the judgment of the district court must be affirmed.

CUNNINGHAM, GREENE, ELLIS, JJ., concurring.