No. 24,772.

THE FARMERS & DROVERS NATIONAL BANK, *Appellee*, v. J. C. HANNAMAN, as Sheriff of Marion County, and THE RICHARD-SCHEBLE CANDY COMPANY, *Appellants*.

### SYLLABUS BY THE COURT.

1. BULK-SALES ACT—*Goods and Fixtures Used in Restaurant Do Not Comprise a "Stock of Merchandise."* Goods and fixtures used in a restaurant conducted on the ordinary plan do not comprise a "stock of merchandise" within the meaning of the bulk-sales act.

2. CHATTEL MORTGAGE—*Mortgagee in Possession—Mortgage Superior to Rights of Subsequent Execution Creditors.* Where the holder of an unrecorded chattel mortgage took actual possession of the property, with the consent of the mortgagor, the mortgage was valid as against a creditor whose execution was levied on the mortgaged property after the mortgagee took possession.

Appeal from Marion district court; CASSIUS M. CLARK, judge. Opinion filed February 9, 1924. Affirmed.

*John E. Wheeler, W. H. Carpenter,* and *W. R. Carpenter,* all of Marion, for appellants.

*Braden C. Johnston,* of Marion, for appellee.

The opinion of the court was delivered by

HOPKINS, J.: This controversy involves the ownership and right of possession of certain restaurant property in the city of Marion. Plaintiff recovered and defendants appeal.

The restaurant was sold by H. L. Perdue to W. H. Quiring and O. S. Green, a copartnership under the firm name of Quiring & Green.

Two instruments in writing were executed, one a promissory note by the purchasers to Perdue, the other a bill of sale by Perdue to Quiring & Green. The instruments read:

"MARION, KANSAS, May 18, 1921.                              No. 3778.

"Nine months after date, I, we or either of us promise to pay to H. L. Perdue or order, at The Farmers & Drovers National Bank, Marion, Kansas, the sum of seven hundred and no 100ths dollars, for value received, with interest at 8 per cent per annum from date.

"The makers, endorsers and guarantors of this note hereby severally waive presentment, notice of non-payment, protest and notice of protest, and diligence in bringing suit against any part...... hereto, and the sureties hereto consent that the time of payment may be extended without notice thereof.

National Bank v. Hannaman.

"$50.00 to be paid each month and in case of default of three payments the White Cafe will return to H. L. Perdue.                     "W. H. QUIRING.
                                                          "O. G. GREEN."

Endorsed.

"I assign the within note to the Farmers & Drovers National Bank, Marion, Kansas, to be placed on my note.                     "H. L. PERDUE.

"9/12/21 Pd. on Principal $50.00
 9/12/21 Pd. Interest (part) $3.00
 9/19/21 Pd. on Principal $30.00
 9/24/21 Pd. on Principal $20.00
 I. R. S. 14 cents cancelled."

"Bill of Sale of Personal Property 313-4.

"Know All Men by These Presents, that in consideration of fifteen hundred dollars, the receipt of which is hereby acknowledged, we do grant, sell, transfer and deliver unto W. H. Quiring and O. G. Green  .  .  .  heirs, executors, administrators and assigns, the following goods and chattels, viz.:

"All furniture and fixtures and plumbing in the east room in the ground floor of the W. H. Thompson building located on the S. W. corner of Main and Second Streets. Also all supplies on hand with the acception of the goods received on two invoices from the H. D. Lee Mercantile Co., of Salina, Kansas, under date of May the 13th, 1921, and amounting to $81.49.

"To Have and to Hold, all and singular, the said goods and chattels, forever; and that the said grantors hereby covenant with the said grantees, that they are the lawful owners of said goods and chattels; that they are free from all incumbrances; that they have good right to sell the same as aforesaid, and that they will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"In witness whereof, the grantor...... have set their hands, this 18th day of May, 1921.                                "H. L. PERDUE,
                                           "MRS. A. A. PERDUE."

The record is not entirely clear, but we understand that the bill of sale was retained by Perdue and turned over to the plaintiff bank with the note.

Quiring and Green defaulted in their payments on the note. In the early days of December, 1921, the Richards-Scheble Candy Company obtained judgment against Quiring and Green and had execution issued. It was levied December 8. Prior thereto the firm of Quiring and Green had been dissolved. Quiring had charge of the property. Before the levy of execution by the Richards-Scheble Company, the restaurant was in charge of Quiring's father, who was transacting the business. Sometime prior to the 8th of December the elder Quiring put out the fires, closed the restaurant, locked the building and turned the keys over to the plaintiff bank. After this a deputy sheriff was about to make a levy on the restau-

rant property when he was advised that the property was claimed by the bank. The sheriff, however, took from the building a coffee urn, some tables, cash register, an ice-box, a writing desk, show-case and other property. Plaintiff demanded the property from the sheriff. The demand was refused—result, this lawsuit.

The plaintiff proceeded upon the theory that the note, with the bill of sale, constituted a chattel mortgage; that upon conditions broken and with consent of the mortgagor, it took possession of the property, and that it had lawful possession at the time of the levy of the defendant's execution. The defendants contend that the sale by Perdue to Quiring and Green and transfer to the bank was a violation of the bulk-sales law; also that the failure to file the note and chattel mortgage for record in the office of the register of deeds rendered the instruments void as to the creditors of Quiring and Green. On that theory they objected to the introduction of testimony, demurred to plaintiff's evidence, submitted special questions, and requested instructions, and finally bring their appeal here. A pertinent part of the bulk-sales act reads:

"The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless the purchaser, etc." (R. S. 58-101.)

Do the provisions of the statute relate to and cover the restaurant business? We think not. While the restaurateur buys merchandise and resells same, ordinarily, it is not sold in the same form as when purchased. He buys foodstuffs and converts it into edible dishes which are sold. The statute covers only a stock of merchandise and fixtures pertaining thereto. A merchant is one who traffics or carries on trade, one who buys goods to sell again, one who is engaged in the purchase and sale of goods. (*Campbell v. City of Anthony,* 40 Kan. 652, 20 Pac. 492.)

The question was recently considered by the supreme court of North Carolina in construing a similar statute of that state. (*Swift & Co. v. Tempelos,* 178 N. C. 487.)

The North Carolina statute reads:

" 'The sale in bulk of a large part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in regular and usual prosecution of the seller's business, shall be *prima facie* evidence of fraud, and void as against creditors of the seller, unless the seller,' " etc.

:·The court there said:

"Goods and fixtures used in a restaurant conducted on the ordinary plan is not a 'stock of merchandise' within the meaning of the bulk-sales act; such words being used in their common and ordinary acceptation, and meaning the goods or chattels which a merchant holds for sale, being equivalent to 'stock in trade.'"   (Syl.)

· In the opinion it was said:

"The question is whether the goods and fixtures used in a restaurant which is conducted on the ordinary plan is a 'stock of merchandise' within the words and meaning of the bulk-sales act. . . . We do not think they come within that designation. The bulk-sales act is in derogation of the common law and must be strictly construed. . . . It is said that the word 'merchandise' is usually, if not almost universally, limited to things which are ordinarily bought and sold in the way of merchants, and as the subjects of commerce and traffic. *Van Patten v. Leonard,* 55 Iowa 520; Burwell's Law Dictionary."

*In re Wentworth Lunch .Co.,* 159 Fed. 413, it was said: .

"The word 'mercantile' though including trade, is larger, being extended to all commercial operations, so that we speak of shipping merchants, commission merchants, and forwarding merchants. Still we do not think that the dishes of a restaurant would ever be described as merchandise, or the proprietor as a merchant, or as engaged in mercantile pursuits." (p. 415.)

In *Garretson v. Merchants' Ins. Co.,* 81 Iowa 727, it was said:

"The permission [in a contract] to use the building for 'any mercantile purpose,' granted pursuant to plaintiff's application, does not authorize the use for a restaurant, which is not a mercantile purpose. The word *'mercantile'* means 'pertaining to merchants, or the business of merchants; having to do with trade, or the buying and selling of commodities; commerce.' Webster. The business of keeping a restaurant is in no sense commerce. If a restaurant be a mercantile establishment, the term is equally applicable to taverns, boarding houses, and the like, which cannot be admitted. The point demands no further attention. Permission to use a building for 'any commercial purpose' does not authorize its use as a restaurant." (p. 729.)

We conclude that the sale by Perdue to Quiring and Green and the transfer to plaintiff was not a violation of the bulk-sales act. (See *Smith v. Boyer,* 119 S. C. 176; *State v. Shoaf,* 179 N. C. 744; *In re Henningsen,* 291 Fed. 684.)

The defendants contend that the mortgage was void because not filed for record. The contention overlooks the fact that the bank had actual possession of the property under the mortgage at the time of the levy of the execution. As between the bank and the defendants, the possession by the bank of the mortgaged property at the time of the levy of the execution cured any defects or irregulari-

ties in its form. The cases cited by the defendants have no application to the facts here.

In *Cameron, Hull & Co. v. Marvin*, 26 Kan. 612, it was said:

"In an action of replevin where the plaintiff claims the property by virtue of four chattel mortgages, and the defendant claims the property by virtue of an attachment issued against the plaintiff's mortgagor, and levied upon the property in controversy, and where the chattel mortgages were never recorded, and the mortgagee did not immediately take possession of the property, but did a long time after the execution of the mortgages and nine days prior to the levy of the attachment upon the property, take the possession of the same under the mortgages, by and with the consent of the mortgagor, held, that the mortgages, from the time the mortgagee took possession of the mortgaged property, must be considered valid." (See, also, *Savings Bank v. Sargent*, 20 Kan. 576; *Frankhouser v. Ellett*, 22 Kan. 127; *Dayton v. Savings Bank*, 23 Kan. 421; *Tootle, Hanna & Co. v. Lyster*, 26 Kan. 589; *McVey v. English*, 30 Kan. 368, 1 Pac. 795; *Dolan, Sheriff v. Van Demark*, 35 Kan. 304; 10 Pac. 848; *Geiser v. Murray*, 84 Kan. 450, 114 Pac. 1092.)

We have considered other objections of defendants but find no reversible error.

The judgment is affirmed.