No. 27,801.

THE FAETH COMPANY, *Appellee,* v. B. L. BRESSIE, L. L. STEVENS, J. R. WALTON and ED STRAWN, *Appellants.*

(264 Pac. 1041.)

SYLLABUS BY THE COURT.

FRAUDULENT CONVEYANCES—*Bulk Sales Act—Sale Under Valid Mortgage.* The bulk sales law (R. S. 58-101 *et seq.*) does not apply to a sale by mortgagee, made under the terms of a valid mortgage, duly executed, delivered and recorded prior to the creation of the debt sought to be enforced under the provisions of the bulk sales law.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed March 10, 1928. Reversed.

*Walter S. Keith, Harold C. McGugin* and *Dallas W. Knapp,* all of Coffeyville, for the appellants.

*Harold Medill,* of Independence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This action presents the question whether the bulk sales law (R. S. 58-101 *et seq.*) applies in the circumstances disclosed by the record.

The facts are substantially these: J. R. Walton was the owner of a building in Coffeyville equipped with counters, wall fixtures and shelving, and having a gasoline pump and air stands in front, used as an automobile garage. He also had a number of articles in the building spoken of as "equipment," consisting largely of tools, appliances and devices used in connection with the garage business, and seven used automobiles spoken of as "rental cars." On August 19, 1925, he entered into a written contract with B. L. Bressie and L. L. Stevens by which he sold to them the equipment and used automobiles above mentioned, and leased to them the building for a term of five years at a monthly rental of $225. There was executed between the parties an instrument called a "chattel mortgage and lease," which recited the sale of the equipment and used automobiles for $3,449.17, of which $2,000 was paid in cash and the balance, with interest thereon, was to be paid in three installments. It also provided for the lease and payment of rents, and specifically provided that

Chattel Mortgages, 11 C. J. pp. 647 n. 20, 651 n. 87. Fraudulent Conveyances, 27 C. J. pp. 874 n. 16, 883 n. 39; 2 L. R. A. n. s. 341; 9 A. L. R. 473; 14 A. L. R. 753; 12 R. C. L. 526. Merchandise, 40 C. J. p. 643 n. 92.

Walton had a lien upon the property sold for the unpaid portion of the purchase price and for the rents, and the buyers and lessees were to keep the gas and air stands in good repair at their expense. It contained the provision, usual in chattel mortgages, that on condition broken, or if Walton should deem himself insecure, he might take possession of the property covered by the lien and sell the same at public or private sale. This chattel mortgage and lease was promptly recorded in the office of the register of deeds. Bressie and Stevens took possession of the building and the property sold. Later they paid the balance due, $1,449.17, and the automobiles named in the instrument were released from the lien. Later, B. L. Bressie sold his business to his partner, L. L. Stevens, who thereafter conducted the business under the name of The Stevens Motor Company. It is not contended, however, that the bulk sales law applied to this sale, for it does not apply to a sale of the interest of one partner in a business to the other. (*Schoeppel v. Pfannensteil,* 122 Kan. 630, 253 Pac. 567. This case is cited and the doctrine approved by the supreme court of Iowa in *The Peterson Co. v. Freeburn,* 215 N. W. 746.) On April 13, 1926, Stevens advised Walton that he could no longer pay the rent on the building nor the damages to the gas pump. Walton then informed Stevens that he deemed himself insecure, and demanded possession of the equipment sold and of the leased premises, under the terms of his chattel mortgage and lease. Walton took possession thereof, and, in accordance with the provisions of the chattel mortgage and lease, which authorized him to sell the same at public or private sale, he did sell them to the defendant, Ed Strawn, and Strawn went into possession thereof.

The action was by plaintiff against Bressie and Stevens (Stevens was not served with summons), and also against Walton and Strawn, for the price of the two radios sold by plaintiff to Bressie and Stevens November 25, 1925, and January 8, 1926, seeking to hold them for the direct liability as purchasers, and seeking to hold Walton and Strawn under the provisions of the bulk sales act. No notice was given creditors of the taking of possession of the property by Walton under the terms of the chattel mortgage and lease, nor of his sale thereof to Strawn. There was a trial to the court. Judgment was rendered for plaintiff. Walton and Strawn have appealed.

Appellants contend that the judgment is contrary to law. The contention is well taken. It might very well be held under the evidence in this case that the garage business as conducted, or rather that the

Faeth Co. v. Bressie.

things in the garage, did not constitute a "stock of merchandise" within the meaning of R. S. 58-101, following the reasoning in *National Bank v. Hannaman*, 115 Kan. 370, 223 Pac. 478 (see 40 C. J. 635). But passing that point, Is the claim of plaintiff under the bulk sales law superior to that of Walton under his mortgage? This chattel mortgage correctly described each article constituting the "equipment" and gave Walton a specific lien thereon, not only for the balance of the purchase price of the equipment and automobiles sold, but for the sums to be paid Walton under the other covenants of the instrument, which were the payments of rent for the full term of the lease and what proved to be the injury and damage to the gas and air stands. In April, 1926, Walton was justified in deeming himself insecure, not only for the $540 damage to the gas and air stands which Stevens was unable to pay, but because Stevens then announced to him that he would be unable to pay rents in the future. We see no reason why the rights accruing to plaintiff under the bulk sales law should be superior to those of Walton under this chattel mortgage. In *Gorman v. Hellberg*, 190 Ia. 728, a stock of merchandise turned over by the lessee to his landlord on a lien "for rent accrued and to accrue" was held not to be in violation of the bulk sales law. Generally, the lien of a chattel mortgage, when the statutory conditions with respect to execution, delivery, filing or recording are complied with, is superior to liens subsequently acquired. (See 11 C. J. 647, 651.) The bulk sales law is primarily designed for the benefit of creditors of merchants and to prevent transfers fraudulent as to them. The mortgage to Walton covering the specific equipment involved, of record months before the indebtedness to plaintiff, of which mortgage the plaintiff had notice at the time the indebtedness was created, cannot well be said to have been given in fraud of plaintiff. No authority is cited supporting the view that the rights of plaintiff under the bulk sales law would be superior to the rights of Walton under his mortgage. Since Walton had a valid mortgage on the equipment, the taking possession of the mortgaged property under the terms of the mortgage and selling it do not constitute a sale in violation of the bulk sales law. That law does not apply to sales made under judicial process (R. S. 58-104), and should not apply to a sale by a mortgagee under the provisions of a prior mortgage. The facts in this case differ from those in *Bank v. Davis*, 103 Kan. 672, 175 Pac. 972, for there the chattel mortgage, in the form of a bill of sale, was given by the

merchant on his stock of merchandise, and the grantee or mortgagee was placed in possession of the property. The controversy there was between the grantee in this bill of sale and a then existing creditor of the merchant.

The judgment of the court below will be reversed, with directions to render judgment for defendants Walton and Strawn.