## BUNDY v. SECURITY BANK & TRUST CO.

No. 25602.  March 12, 1935.

O. F. Mason and J. G. Austin, for plaintiff in error.

Frank Nesbitt, for defendant in error.

PER CURIAM. This case was tried by

the court on an argeed statement of facts. It was stipulated that one Humphries, on August 25, 1927, executed a chattel mortgage to the defendant bank to secure the sum of $4,000, which was on that date filed with the county clerk, covering a stock of merchandise, including boots, shoes, and shoe findings located in Humphries place of business; that the shoes and shoe findings were sold to the retail trade and the stock of merchandise was replenished with new stock from various sources, and the defendant bank did not have possession of the stock, nor did it require an accounting of sales made thereof in the course of business; that the defendant bank took possession of said mortgaged property with consent of Humphries for the purpose of foreclosing its chattel mortgage on February 12, 1930, and the bank commenced foreclosure by posting notices of sale; that on said date Humphries was indebted to the plaintiff in the sum of $144 for unpaid rent, and on February 15, 1930, plaintiff commenced this action and levied an attachment on the stock of goods in the hands of the bank, and under a stipulation of the parties the bank proceeded with its foreclosure and sold the goods for $1,525, which is being held pending the outcome of this litigation; that at the time the stock of goods was taken over by the bank on February 12, 1930, there was no attempt to comply with the Bulk Sales Law of Oklahoma. The attachment did not cover fixtures or machinery.

The legal issue involved in this case is whether or not the taking possession of the stock of goods by the bank under the circumstances of this case was a "transfer" within the meaning of the Bulk Sales Law.

Section 10014, chap. 48, art. 2, O. S. 1931, provides:

"The transfer of any portion of a stock of goods, wares and merchandise pertaining to the conducting of said business, otherwise than in ordinary course of trade in the regular and usual prosecution of the transferrer's business, or the transfer of an entire such stock in bulk, shall be presumed to be fraudulent and void as against the creditors of such transferrer, and such presumption may be rebutted only by the proposed transferee showing that, at least ten days before the transfer, and in good faith, he made a full and explicit inquiry of his transferrer, and of all antecedent transferrers in sales made within 90 days prior thereto, as to the names and addresses of each and all of his, or their creditors, and that he demanded and received from such transferrer or transferrers at least ten days before such transfer a list of names and addresses of all the creditors of said transferrer or transferrers, showing the amount owing each, which statement must be sworn to by such transferrer, or transferrers, and the oath shall include a declaration that it is a correct list of all of his or their creditors, with the post-office address and the amount owing each; and that, at least ten days before the transfer, the transferee notified or caused to be notified, of such proposed transfer personally, or by registered mail, each of the creditors of such transferrer, or transferrers, of whom such transferee had knowledge, or could with the exercise of reasonable diligence, acquire knowledge; and that such purchase was made by him in good faith, for a fair consideration actually paid."

Section 10016, O. S. 1931, provides as follows:

"Transfers under this act shall include transfers in payment of debt in whole or in part, pledges, mortgages, sales, exchange and assignments, but nothing contained in this act shall apply to transfers made by executors, administrators, receivers, assignees under voluntary assignment for the benefit of creditors, trustees in bankruptcy or sales under judicial process."

Under the facts and our statutes, supra, the taking possession under the chattel mortgage amounted to a "transfer." The mere execution and filing, however, of a chattel mortgage in Oklahoma, does not amount to a transfer within the meaning of the Bulk Sales Law. The chattel mortgage simply created a lien. See Smith-Wogan Hdwe. & Imp. Co. v. Bice, 34 Okla. 294, 125 P. 456. The "transfer" did not take place until the bank with the consent of Humphries took possession. At that time the bank should have complied with the steps required in the Bulk Sales Law. Notice should have been given to the creditors. We hold that Bundy was entitled to notice of the transfer of this stock of goods to the bank.

In the case of Cohen v. Exchange Nat. Bank of Tulsa, 166 Okla. 177, 26 P. (2d) 910, it was held as follows:

"Where the mortgagor remains in possession and sells the property in the ordinary course of trade and applies the proceeds as he pleases without an agreement with the mortgagee as to how the proceeds are to be applied, and without dictation from the mortgagee, a transfer within the meaning of the act is not accomplished."

Thus, as a corollary, when possession is given to and taken by the mortgagee, a

transfer is accomplished which is within the purview of the Bulk Sales Act.

In Semmes v. Rudolph Stetcher Brewing Co., 195 Mo. App. 621, 187 S. W. 604, it was held that where possession was taken under a chattel mortgage to a brewing company of all a saloon keeper's stock of merchandise, etc., compliance with the Missouri Bulk Sales Law was required. The taking of possession was a "disposition" within the meaning of the Bulk Sales Law.

The defendant in error asserts that the taking possession under the chattel mortgage does not constitute a sale in violation of the Bulk Sales Law, and in support of this theory relies upon a Kansas case, Faeth v. Bressie et al., 125 Kan. 425, 264 P. 1077. We have read this case carefully and find that the same is not in point. It is based upon the Kansas Bulk Sales Law. (Sections 4894-4897 of the Kansas General Statute of 1915.) The Kansas statute does not include transfers under mortgages, whereas our Bulk Sales Act was amended by section 3, chap. 152, S. L. 1917, whereby transfers under mortgages were made one of the methods of transfer requiring compliance with the act.

The Kansas case, therefore, has no bearing on the case at bar.

The defendant bank having failed to comply with the preliminary steps required by our Bulk Sales Law in the taking possession of the mortgaged property, the transfer was fraudulent and void as to the creditor Bundy, and the court committed error in refusing to sustain his attachment. The judgment of the lower court is hereby reversed, with directions that judgment be entered in favor of the plaintiff sustaining his attachment and directing the bank to pay to the plaintiff the amount sued for and all costs.

The Supreme Court acknowledges the aid of Attorneys A. M. Woodford, W. T. Anglin, and Dudley B. Buell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Woodford, and approved by Mr. Anglin and Mr. Buell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and WELCH, PHELPS, and CORN, JJ., concur.