No. 34,142

J. Earl Wyatt, Trustee, et al., *Appellants*, v. George H. Duncan, *Appellee.*

(87 P. 2d 233)

Opinion filed January 28, 1939.

*William S. Norris, Wint Smith* and *Homer B. Jenkins*, all of Salina, for the appellants.

*David Ritchie* and *C. L. Clark*, both of Salina, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a trustee in bankruptcy to recover damages from a surety on a replevin bond. The principal, Joseph Duncan, in the replevin action had sold a stock of furniture and fixtures to L. E. Smith and W. H. Hollis, Jr., partners, under an unrecorded conditional sales contract. Prior to the filing of the petition in bankruptcy of the vendees, the vendor obtained possession of the stock and fixtures in a replevin suit, sold the property under the terms of the contract, and dismissed the replevin suit. In the instant case the trustee sought to recover from the surety, George H. Duncan, on the replevin bond, the value of the property on the basis of the value thereof as fixed in the replevin affidavit. The surety answered and prayed that judgment be rendered against him for the sum of one dollar only and for the then accrued costs of the action. After the trustee filed a reply the surety moved for judgment on the pleadings except as to nominal damages. The motion was sustained and the trustee appeals. The pertinent averments of the petition were in substance as follows:

On February 7, 1931, Smith & Hollis, partners, and Smith and

Hollis, as individuals, filed their voluntary petition in bankruptcy and were adjudicated bankrupt February 9, 1931. J. Earl Wyatt is the duly constituted and qualified trustee in bankruptcy. On February 3, 1931, Joseph Duncan instituted a replevin action against Smith & Hollis, partners, and on February 5 obtained possession of the property in question under the writ of replevin. The defendant, George H. Duncan, signed the replevin bond as a surety. On March 3, 1931, the replevin action was dismissed without prejudice on the motion of the plaintiff in that action. The rights of the plaintiff to the possession of the property had not been adjudicated. Had Joseph Duncan not obtained possession of such property prior to the filing of the petition in bankruptcy, the trustee would have been entitled to the possession thereof. By reason of the dismissal of the replevin action the terms of the bond were violated and the surety, George H. Duncan, became liable to Smith and Hollis in the replevin action in the sum of $4,000, the value of the property, with interest from March 3, 1931. The trustee became vested with all the property and the rights of Smith and Hollis, as of the date they were adjudged bankrupts.

The pertinent provision of the replevin bond reads:

"Now, we, the undersigned, residents of said county and state, bind ourselves to said defendant, in the sum of four thousand ($4,000) dollars, that said plaintiff shall duly prosecute the above action, and pay all costs and damages that may be awarded against him, and, if a return of the property therein delivered to him be adjudged, that he will deliver the same to said defendant."

The material averments of the answer filed by the surety were in substance as follows:

His principal, Joseph Duncan, was, under the terms of his contract, entitled to the possession of the property at the time such possession was obtained by virtue of the writ. On January 1, 1930, and prior thereto, Joseph Duncan was the owner of the property, and on January 1, 1930, entered into a written contract with Smith and Hollis. On January 1, 1931, the vendees had failed to make the payments on the purchase price according to the terms of the contract. Demand was made for the possession of the property and the demand was refused. Joseph Duncan obtained possession by virtue of the writ of replevin. The sheriff held the property twenty-four hours as provided by law and delivered it to Joseph Duncan. (No redelivery bond was filed.) On March 3, 1931, Joseph Duncan dismissed the replevin action without prejudice. He was entitled to the

possession under the express terms of the written agreement. The trustee was entitled to nominal damages only for the failure of Joseph Duncan to prosecute the replevin action and he (the surety) confessed judgment in the sum of one dollar and all accrued costs, including the costs of filing his answer.

Pertinent provisions of the contract attached to the answer were in substance as follows:

Joseph Duncan was the owner of the building located at 156 North Santa Fe avenue, in the city of Salina, where the personalty covered by the contract was located. Joseph Duncan was also the owner of the stock and fixtures. The latter were sold in consideration of the sum of $3,087.01. The title to the property remained in Joseph Duncan until the purchase price was fully paid. Smith and Hollis agreed to pay a monthly rental on the building in the sum of $120, and $100 per month on the purchase price out of the proceeds of sale. The vendees were permitted to take from the proceeds of the business the sum of $75 per month for their services. They were required to keep accurate book accounts. The title and right to the possession of the stock and fixtures and to any and all other goods which the vendees might at any time purchase were to be and remain in Joseph Duncan. The vendees were required to pay all taxes and lawful assessments of a public nature assessed against the stock and fixtures. Upon default in payments the vendor had the right to take immediate possession of the stock and fixtures and to sell the same in the same manner as though they had been taken upon a chattel mortgage. After deducting the expenses of the sale and the amount due on the contract any surplus was to be paid to the vendees. The latter agreed to pay cash for merchandise, furniture or equipment purchased. They had no right or authority to purchase any stock or equipment on credit without the written consent of the vendor. The vendor retained the right to take immediate possession of all the property if he should at any time deem himself insecure.

The reply of the trustee admitted the execution of the conditional sales contract, the obtaining of the possession by the vendor under the writ, denied demand for possession and denied the goods were the same as those originally conveyed by the contract in that the vendees had sold from such stock and added other merchandise thereto and commingled it therewith, and in substance further alleged:

The contract was a conditional sales contract under the provisions of G. S. 1935, 58-314, and neither the contract nor a copy thereof had been filed for record within four months prior to the filing of the petition in bankruptcy, or at any other time, and was wholly void as against creditors of the vendees and the trustee. After the execution of the contract the vendees continued in possession of the property in the same building, which building for many years had been used by them as a new and secondhand furniture store. The vendor was estopped and had waived any right to claim ownership of the merchandise and fixtures as against creditors of the vendees and as against the trustee. Various persons had extended credit to the vendees and were such creditors at time of the issuance of the replevin writ. The vendor knew or had reason to know the vendees were insolvent when he obtained possession. The taking of possession by the vendor was a disposal of the stock and fixtures and constituted a sale or disposal thereof under the bulk-sales law without complying with its provisions, and such disposal was void. The dismissal of the replevin action prevented the trustee from asserting his rights thereto in that action. The sale of the property by the vendor, which sale was conducted in all respects as a sale of property under a chattel mortgage, left the trustee with no recourse except an action upon the replevin bond. .

Did the trial court err in the judgment rendered?

Under our conditional sales statute, G. S. 1935, 58-314, which declares a conditional sale void as to innocent purchasers or creditors of the vendee unless the original instrument or a copy thereof shall have been entered upon the records, the word "creditors," as therein used, means creditors who have acquired a lien on the property, and not merely general creditors. (*Great Western Stage Equipment Co. v. Iles,* 70 F. 2d 197, and Kansas cases therein cited.) In the instant case no creditors had acquired a lien prior to the time the vendor obtained possession nor prior to the filing of the petition in bankruptcy by the vendees.

In 4 Remington on Bankruptcy, 4th ed., it is said:

"But, if possession is taken by the mortgagee or conditional vendor before the bankruptcy petition is filed, such taking of possession operates as a filing, provided this be the local law, and the lien will be good although bankruptcy follows within four months, unless the mortgage or conditional sale is otherwise void as a preference, or void as containing a power of sale, or void for some other reason." (p. 436.)

In *Jacquart v. Jennings*, 118 Kan. 224, 235 Pac. 101, we reviewed our former decisions and stated:

"In *National Bank v. Hannaman*, 115 Kan. 370, 223 Pac. 478, this court said:

" 'Where the holder of an *unrecorded* chattel mortgage took actual possession of the property, with the consent of the mortgagor, the mortgage was valid as against a creditor whose execution was levied on the mortgaged property after the mortgagee took possession.' (Syl. ¶ 2.)

"These rules have been established in this state by a long line of decisions. "Jones on Chattel Mortgages, 5th ed., section 164a, contains the following language:

" 'It is immaterial whether the mortgagee takes possession *in invitum or the mortgagor voluntarily* puts him in possession, if the act be done in pursuance of a license contained in the deed. In the one case as much as in the other, the mortgagee obtains possession by virtue of a valid contract which entitled him to such possession.'

"In *Gagnon v. Brown*, 47 Kan. 83, 85, 27 Pac. 104, the following language will be found:

" 'If a mortgagee takes possession of the mortgaged property before any other right or lien attaches, his title under the mortgage is good against everybody, *if it was previously valid between the parties.*' (See cases there cited.)

"The plaintiff was in the rightful possession of the safe under a valid chattel mortgage." (p. 226.) (Italics inserted.)

A conditional sales contract which reserves title to the property in the vendor until the purchase price is fully paid is valid in Kansas as between the parties thereto, and in the event of default by the purchaser thereunder the vendor has the right to repossess the property. (*Great Western Stage Equipment Co. v. Iles*, supra, and that is true in this state, although the contract is unrecorded; *Bailey v. Baker Ice Machine Co.*, 239 U. S. 268, 60 L. Ed. 275, 286.)

The rights of the trustee did not become effective until the date the petition in bankruptcy was filed. (*Bailey v. Baker Ice Machine Co.*, supra.) A trustee in bankruptcy is not an innocent purchaser. He takes the property as the bankrupt had it at the time the petition was filed, subject to all valid claims, liens and equities. (*In re Klein*, 3 F. 2d 375, 377.) In the case of *In re Ford-Rennie Leather Co.*, 2 F. 2d 750, it was said:

"Had the petitioner actually obtained possession of its property before the petition in bankruptcy was filed the trustee would have been without rights therein or thereto, notwithstanding the nonrecording of the contract, for the rights of a trustee under section 47a(2) of the bankruptcy act do not antedate the filing of the petition in bankruptcy (*Bailey v. Baker Ice Machine Co.*, 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275); and an unfiled conditional sales contract

is valid as to all persons until the moment a purchaser from or creditor of the buyer without notice purchases the goods or acquires a lien upon them. Sections 4 and 5 of the Delaware statute." (p. 757.)

See, also, *Great Western Stage Equipment Co. v. Iles*, supra, and *Finance & Guar. Co. v. Oppenhimer*, 276 U. S. 10, 72 L. Ed. 443.

What about the contention that the act of taking possession by the vendor constituted a preference under the national bankruptcy act? The vendor had retained title to the property until the purchase price was fully paid. He was also granted the express right, under the terms of the contract, to repossess the property in the event of default in payments and to sell the property in the same manner as property is sold under a chattel mortgage. He obtained such possession before a lien of any creditor attached and before the rights of the trustee accrued. It is well established that where a vendor under an unrecorded conditional sales contract takes possession of the property within the four-months period prescribed by the national bankruptcy act, under the terms of a contract between the parties and executed in good faith prior to such four-months period, the act of taking possession does not constitute a voidable preference or transfer within the meaning of the bankruptcy act. (*Kettenbach v. Walker*, [1919] 32 Idaho 544, 550; *Bailey v. Baker Ice Machine Co.*, [1915] supra; *Finance & Guaranty Co. v. Oppenhimer*, [1928] supra.) Nor does the act of taking possession constitute a preference by reason of the contract provisions covering after-acquired property, if such a contract pertaining to after-acquired property is valid between the parties in the state where executed. (*Kettenbach v. Walker*, supra; *Humphrey v. Tatman*, 198 U. S. 91, 49 L. Ed. 956; *Robinson v. Bowe*, 73 F. 2d 238.) In this state the validity of such contracts, as between the parties thereto, has been recognized and the rights of the vendor have been upheld where the vendor obtained possession before a specific right in or lien upon the property in favor of a creditor attached. (*Campbell v. Quinton*, 4 Kan. App. 317; *Dodge v. Smith*, 5 Kan. App. 742; *Cameron, Hull & Co. v. Marvin*, 26 Kan. 612; *Live Stock Co. v. Guthrie*, 50 Kan. 467, 474, 31 Pac. 1071; *Bank v. McIntosh*, 72 Kan. 603, 613, 84 Pac. 535; *Holt v. Lucas*, 77 Kan. 710, 714, 96 Pac. 30; *Dixon v. Tyree*, 92 Kan. 137, 140, 139 Pac. 1026; 11 C. J., Chattel Mortgages, p. 436.)

Did the act of taking possession of the entire stock and fixtures constitute a violation of our bulk-sales law? (G. S. 1935, 58-101.) The trustee contends it did. That statute provides:

"The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless the purchaser receives from the seller a list of names and addresses of the creditors of the seller certified by the seller under oath to be a complete and accurate list of his creditors, and unless the purchaser shall, at least seven days before taking possession of the property, or before paying therefor, notify in person or by registered mail, every creditor whose name and address is stated in said list, or of whom he has knowledge of the proposed sale."

The trustee urges this court has held the act of surrendering and delivering a stock of merchandise by a mortgagor to a mortgagee constitutes a sale or at least a "disposal" within the meaning of the statute. (*Bank v. Davis*, 103 Kan. 672, 175 Pac. 972; *Joyce v. Armourdale State Bank*, 127 Kan. 539, 274 Pac. 200.) In *Bank v. Davis*, supra, this court clearly emphasized the fact that under our law title to chattels passes by execution of the mortgage, and that this was not the law in many other jurisdictions. In view of that distinction it follows our decision in *Bank v. Davis*, supra, is seemingly not in actual conflict with the majority rule. (See annotation, 9 A. L. R. 473, 475.) No title had passed to the vendees under the instant contract. The title remained in the vendor. The vendor obtained possession by virtue of the replevin action and not by reason of any act of the vendees. They did not dispose of the property. It was wrested from them by judicial process. In *Faeth Co. v. Bressie*, 125 Kan. 425, 264 Pac. 1041, this court said:

"Since Walton had a valid mortgage on the equipment, the taking possession of the mortgaged property under the terms of the mortgage and selling it do not constitute a sale in violation of the bulk-sales law. That law does not apply to sales made under judicial process (R. S. 58-104), and should not apply to a sale by a mortgagee under the provisions of a prior mortgage. The facts in this case differ from those in *Bank v. Davis*, 103 Kan. 672, 175 Pac. 972, for there the chattel mortgage, in the form of a bill of sale, was given by the merchant on his stock of merchandise, and the grantee or mortgagee was placed in possession of the property. The controversy there was between the grantee in this bill of sale and a then existing creditor of the merchant." (p. 427.)

Here again it must be remembered that, in the instant case, the vendor who held the title obtained also the possession of the property before a specific right or lien of any creditor attached. Under all of these circumstances we think it cannot fairly be concluded the act of taking possession by the vendor constituted a violation of the bulk-sales law.

What, then, was the liability of the surety to the trustee on the replevin bond? That liability is measured by the terms and provisions of the bond. The bond was in the sum of $4,000. That amount served only to fix the limit of the liability in the event it should be determined the plaintiff in the replevin action was not entitled to the possession of the property. The conditions of the bond were three in number: first, that the plaintiff would duly prosecute the action; second, to pay all costs and damages that might be awarded against him; third, that he would deliver the property to the defendants in the event such a return was decreed. Plaintiff clearly was entitled to possession of the property under the terms of the contract and hence there was no liability under the third condition of the bond or for damages under the second condition of the bond. The only liability was for the breach of the first condition, namely, to duly prosecute the action. Under these circumstances the judgment for nominal damages, and for the costs of the action covered by the second condition of the bond, was proper. (*Little v. Bliss*, 55 Kan. 94, 39 Pac. 1025; *Ihrig v. Bussell*, 68 Wash. 70, 122 Pac. 608; annotation, L. R. A. 1917A 1191.) The costs which had accrued, including the costs for the filing of the answer, in which defendant offered to confess nominal damages, constituted the proper amount of liability for costs.

A review of the various authorities, including each of those cited by the trustee, compel an affirmance of the judgment. It is so ordered.