No. 43,978

James L. Quinn, Trustee in Bankruptcy of the Estate of Galen Smith Houdyshell and Luella Taylor Houdyshell, his wife, *Appellee*, v. Walter Voorhees and Georgetta M. Voorhees, *Appellants*.

(400 P. 2d 986)

Opinion filed April 10, 1965.

*Fred S. Jackson*, of Topeka, argued the cause, and *Walter G. Stumbo, Robert R. Irwin, Craig Irwin* and *Mary Schowengerdt*, all of Topeka, were with him on the brief for the appellants.

*George D. Wagstaff*, of Topeka, argued the cause, and *Robert D. Hecht*, also of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This *is* a plenary action brought by a trustee in bankruptcy to recover the value of a certain stock of merchandise

taken by the defendants from the bankrupts by virtue of a chattel mortgage executed between the defendants and the bankrupts on December 9, 1960. The trustee sought to set aside the transactions between the defendants and the bankrupts on the ground that they constituted a voidable preference under the Bankruptcy Act. The trustee prevailed in the court below, and appeal has been duly perfected by the defendants.

The primary question presented by this appeal is whether the transaction in question constituted a voidable preference under the Bankruptcy Act. A secondary question is presented as to whether the transaction between the defendants and the bankrupts violated the Kansas Bulk Sales Law.

The case was submitted to the trial court for decision upon facts which were stipulated by counsel for the respective parties.

The parties stipulated, in substance, that James L. Quinn (plaintiff-appellee) was appointed trustee in bankruptcy of the estate of Galen Smith Houdyshell and Luella Taylor Houdyshell, his wife, and brings this plenary action in his official capacity as the trustee in bankruptcy to recover from Walter Voorhees and Georgetta M. Voorhees, his wife, (defendants-appellants) the value of a certain stock of merchandise taken by the appellants from the possession of Houdyshells, the bankrupts. The trustee also sought to recover possession of the books, records and accounts receivable ledger now in the possession of the appellants.

On or about the 9th day of December, 1960, the bankrupts executed a document which purported to be a chattel mortgage on certain goods and chattels located at 916 Kansas Avenue, Topeka, Kansas. This document was admitted into evidence. The goods and chattels described in the mortgage were as follows: "Such goods and chattels being the stock of merchandise and Accounts Receivable to Houdyshells."

There was no apparent change in the operation of the business known as Houdyshell Men's Wear, and Galen Smith Houdyshell continued to operate the business in the same manner as he had been doing prior to the execution of the mortgage in question. The chattel mortgage also provided that:

"Mortgagors should have the right to sell any of the stock of merchandise in the usual course of business. However, it is agreed that the mortgage on the stock of merchandise shall be a continuing mortgage and mortgagors will substitute merchandise of equal quality and value to replace the stock of merchandise sold in the ordinary course of business."

The mortgage also provided that the mortgagees should have the right of possession upon the breach of any of the covenants contained therein or the default in performance of any of the terms. The chattel mortgage was recorded on February 16, 1961, at 3:23 p. m. in the office of the Register of Deeds of Shawnee County, Kansas.

On December 9, 1960, the same date upon which the purported chattel mortgage was executed, the appellants and the bankrupts executed a dissolution of partnership agreement and promissory note, which were received by the trial court in evidence. From December 9, 1960, until December 31, 1962, the bankrupts operated the business, sold merchandise at retail and purchased merchandise to replenish the stock, all in the usual course of a retail business. During this time the bankrupts made payments to the appellants in accordance with the terms of the dissolution of partnership agreement and chattel mortgage. These payments were stipulated by the parties to be in accordance with the terms of the documents executed by the appellants and the bankrupts, and bore no direct relation to the amount of sales which were made in the course of the operation of the business. It was further stipulated that 20 percent of the merchandise on hand at the time the appellants took possession of the stock from the bankrupts was the original merchandise which was on hand at the time of the execution of the mortgage, and that 80 percent of the stock had been acquired subsequent to the execution of the mortgage.

On or about the 31st day of December, 1962, the appellants demanded and took possession of the entire stock of merchandise, the books, records and accounts receivable ledger of the business, and, it is stipulated, at that time the appellants had reasonable cause to believe the the bankrupts, doing business as Houdyshell Men's Wear, were insolvent.

Thereafter, the appellants sold the property and, in accordance with an agreement between the parties, deposited the money in the First National Bank of Topeka where it remains at this time subject to the orders of the court.

On the 7th day of January, 1963, a voluntary petition in bankruptcy was filed by the Houdyshells, doing business as Houdyshell Men's Wear, and subsequently they were adjudged bankrupt on said petition.

The trial court held the act of taking possession of the mortgaged

property by the appellants constituted a voidable preference under the Bankruptcy Act, and further held, in ruling upon the motion for a new trial, that the transaction between the appellants and the bankrupts violated the Kansas Bulk Sales Law.

It has repeatedly been held by this court that a mortgage covering after-acquired property is an executory contract giving the mortgagee the right of possession upon acquisition. (*Campbell v. Quinton*, 4 Kan. App. 317, 45 Pac. 914; *Cameron, Hull & Co. v. Marvin*, 26 Kan. 612; and *Johnson v. Interstate Securities Co.*, 152 Kan. 346, 103 P. 2d 795.)

It has also been held if the mortgagee takes possession of the after-acquired property with the mortgagor's consent, the mortgage is effectuated. (*Bank v. McIntosh*, 72 Kan. 603, 613, 84 Pac. 535; and cases cited therein.)

It has even been held where the holder of an unrecorded chattel mortgage takes actual possession of the property, with the consent of the mortgagor, the mortgage is valid as against a creditor whose execution was levied on the mortgaged property after the mortgagee took possession. (*National Bank v. Hannaman*, 115 Kan. 370, 223 Pac. 478.)

In *Jacquart v. Jennings*, 118 Kan. 224, 235 Pac. 101, Jones on Chattel Mortgages, 5th ed., § 164a, is approvingly quoted as follows:

"'It is immaterial whether the mortgagee takes possession *in invitum* or the mortgagor voluntarily puts him in possession, if the act be done in pursuance of a license contained in the deed. In the one case as much as in the other, the mortgagee obtains possession by virtue of a valid contract which entitles him to such possession.'" (p. 226.)

(See, also, *Wyatt v. Duncan*, 149 Kan. 244, 87 P. 2d 233.)

In *Gagnon v. Brown*, 47 Kan. 83, 27 Pac. 104, it was said:

". . . If a mortgagee takes possession of the mortgaged property before any other right or lien attaches, his title under the mortgage is good against everybody, *if it was previously valid between the parties.* . . ." (Emphasis added.) (p. 85.)

In actions such as these by a trustee in bankruptcy appointed pursuant to federal law, the validity of the chattel mortgage is to be determined by the law of Kansas. (*Etheridge v. Sperry*, 139 U. S. 266, 35 L. Ed. 171, 11 S. Ct. 565 [1891]; and *Bussert v. Quinlan*, 267 F. 2d 219 [10th Cir. 1959].)

Under Section 70 (c) of the Bankruptcy Act (11 U. S. C. A. § 110 [c]) the trustee, as to all property, whether or not coming into pos-

session or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of the bankruptcy, shall be deemed vested as of such date with all the rights, remedies and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists. It has been said the trustee under this section stands in the position of a judgment creditor holding an execution duly returned unsatisfied.

Section 70 (e) (11 U. S. C. A. § 110 [e]) gives the trustee whatever rights any creditor of the bankrupt with a provable claim has under state or federal law to attack a transaction which is fraudulent and voidable for any other reason by such creditor.

Thus, if the chattel mortgage here in question is void under the laws of Kansas as to creditors in the categories above mentioned, it is void as against the trustee in bankruptcy. (See, *Bussert v. Quinlan*, supra.)

In Section 60 (a) (1) of the Bankruptcy Act (11 U. S. C. A. § 96 [a] [1]) a preference is defined as follows:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section 60 (a) (2) of the Bankruptcy Act (11 U. S. C. A. § 96 [a] [2]) provides in part:

". . . a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. . . ."

In the Collier Bankruptcy Manual (2nd ed. 1964), § 60.01, p. 619 it is stated:

". . . Briefly stated, the elements of a preference under § 60a consist of a debtor (1) making or suffering a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt [resulting in a depletion of the estate], (4) while insolvent, and (5) within four months of bankruptcy or of the original petition under Chapters X, XI, XII or XIII of the Act, (6) the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class. Subdivision *b* of § 60 then provides that such a preference may be avoided by the trustee under proof of the additional element that (7)

*the creditor receiving or to be benefited by the preference had reasonable cause to believe that the debtor was insolvent.  . . ."*

It is important to note the mortgagee in this case obtained possession of the mortgaged property prior to the filing of any liens or claims upon the mortgaged property by virtue of his chattel mortgage which had been *executed and recorded more than two years prior* to the time at which he took possession.

The only Kansas decision touching the point in question is *Wyatt v. Duncan,* supra, which the appellants assert as virtually a "bay horse" case and decisive of all the issues raised in the instant case.  In that case the instrument involved was a conditional sales contract rather than a chattel mortgage.  There a trustee in bankruptcy brought an action to recover damages against a surety on a replevin bond, which had been given in a replevin action by a vendor, prior to the filing of a petition in bankruptcy by the vendees, to recover possession of a stock of merchandise and fixtures from the vendees who had purchased the same under a conditional sales contract which had never been recorded.  The trustee, among other things, contended that the transaction constituted a preference under the Bankruptcy Act.  After an exhaustive review of the decisions concerning similar circumstances, where both conditional sales contracts and chattel mortgages were involved, the court held:

"The vendor retained title to the property under the express terms of the contract, and obtained possession thereof by virtue of judicial process, and not by reason of any act of the vendees.  The vendor obtained possession of the property before any creditor obtained a specific right in or a lien upon the property and prior to the filing of the petition in bankruptcy by the vendees; the taking of possession, under the circumstances, operated as a filing of the contract for record; the act of taking possession within the period of four months prior to the filing of the petition in bankruptcy did not constitute a preference or a transfer under the provisions of the national bankruptcy act (11 U. S. C. A. § 96), nor did it constitute a preference or transfer under that act by reason of the provision in the contract which vested title in the vendor to after-acquired property." (Syl. ¶ 3.)

It must be recognized when the *Wyatt* decision was announced the Bankruptcy Act provided that the trustee occupied the status of a *bona fide* purchaser for value, while at the present time, by reason of amendment to the Bankruptcy Act, the trustee now stands in the shoes of a judgment creditor holding an execution duly returned unsatisfied.  The change in the status of the trustee makes

no difference, however, in the practical application in the rules of law stated in *Wyatt v. Duncan,* supra.

The language of Section 60 of the Bankruptcy Act (11 U. S. C. A. § 96) must be read together with the language in Section 70 (a) of the Bankruptcy Act (11 U. S. C. A. § 110 [a]), the pertinent portion of which provides:

"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, *shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title,* . . ." (Emphasis added.)

In a comprehensive annotation in 134 A. L. R. 1219, *et seq.,* the case of *Wyatt v. Duncan,* supra, is cited as stating the majority rules of law with respect to the issues involved in the instant case. In a later annotation in 71 A. L. R. 2d 1446, *et seq.,* it is apparent that subsequent to the revisions of the Bankruptcy Act in which the status of the trustee was changed as above set out, a majority of the states which have decided this precise question have not allowed the trustee to prevail.

The appellee, and the lower court in its decision, relied upon *Bussert v. Quinlan,* supra, decided in the United States Court of Appeals for the 10th Circuit, which based its decision upon a construction of the Kansas law. It is to be noted, however, the mortgagee in the *Bussert* case *never took possession of the after-acquired mortgaged property.*

Language relied upon by the trial court in the *Bussert* case was quoted from *Bank v. Hardman,* 89 Kan. 212, 131 Pac. 602, as follows:

" 'Where a chattel mortgage is executed upon a stock of merchandise, and the mortgagor by consent of the mortgagee, whether expressed in writing or not, makes sales in the ordinary course of business, without applying any of the proceeds to the payment of the mortgage debt, the transaction amounts to a legal fraud upon creditors, and the instrument is void as to them. While a different view is taken in some jurisdictions, this is the settled doctrine in Kansas. *Implement Co. v. Schultz,* 45 Kan. 52, 25 P. 625; *Smith v. Epley,* 55 Kan. 71, 39 P. 1016. See, also, other cases cited in 6 Cyc. 1108, and *Brooks v. Bank of Beaver City,* 82 Kan. 597, 109 P. 409. Whether the mortgage is recorded or not can make no difference with the application of this rule.' " (p. 222.)

An analysis of *Bank v. Hardman,* supra, discloses that the quoted language has application to the facts there before the court. There a surety on a note, who was induced to become such by the assurance of the payee that its payment was to be fully secured by a

chattel mortgage upon a stock of merchandise, intended when he signed the note that the mortgagor should be permitted to remain in the possession of the goods, and to make sales in the usual course of business, without applying the proceeds to the debt. Where this course was followed, it was held, the mortgage was thereby rendered invalid by conduct in which the surety participated, and he could not escape liability on the note by showing that without his knowledge the mortgage had been withheld from record.

On the facts in that case the chattel mortgage in the bankruptcy proceedings was adjudged void because at the time the mortgage was executed the owners of the note withheld it from record, by agreement with the mortgagee, in order to give him a false appearance of good credit. The opinion does not disclose that the mortgagee ever took possession of the mortgaged property. The law above quoted from the opinion follows decisions where the mortgagee of a chattel mortgage leaves the mortgagor in possession of the property covered by the mortgage, and has never taken possession of the property pursuant to the terms of the chattel mortgage, where rights of attaching or lien creditors have intervened. (See, *Johnson v. Interstate Securities Co.*, 152 Kan. 346, 103 P. 2d 795.) At the foundation of the decision in *Bank v. Hardman*, supra, was the failure of the mortgagee to record the chattel mortgage. In holding the surety liable on the note the recording of the mortgage was immaterial because the surety had full knowledge of the material facts. (See, *Humphrey v. Mayfield*, 63 Kan. 208, 65 Pac. 234, upon which the trial court also relied.)

On the facts in this case there were no attaching creditors or lien creditors who acquired any right to the merchandise, including the after-acquired property, prior to the time the mortgagee took actual possession of the property covered by the chattel mortgage. (This we must assume from silence of the record on the point, where the trustee has the burden of proof.)

We hold where the mortgagee of a recorded chattel mortgage covering a stock of merchandise, including after-acquired property, takes possession of the property covered by the mortgage pursuant to its terms within the four-month period prescribed by the Federal Bankruptcy Act, under the terms of a mortgage between the parties executed in good faith prior to the four-month period, and there are no attaching creditors or lien creditors who acquired any right in the property covered by the mortgage prior to the time the

mortgagee takes actual possession of such property, the act of taking possession does not constitute a voidable preference or transfer within the meaning of the Bankruptcy Act.

Did the transactions between the parties constitute a violation of the Kansas Bulk Sales Law?

G. S. 1949, 58-101 (now K. S. A 58-101) provides:

"The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless the purchaser receives from the seller a list of names and addresses of the creditors of the seller certified by the seller under oath to be a complete and accurate list of his creditors and unless the purchaser shall, at least seven days before taking possession of the property, or before paying therefor, notify in person or by registered mail, every creditor whose name and address is stated in said list, or of whom he has knowledge of the proposed sale."

The trustee contends the transaction between the appellants and the bankrupts is void as to other creditors by reason of the foregoing statute. The trustee argues the appellants demanded and took possession of the entire stock of merchandise and books of record of the bankrupts, doing business as Houdyshell Men's Wear, on December 31, 1962; that at the time possession was acquired the appellants knew the Houdyshells were insolvent; that on January 7, 1963, the bankrupts filed their voluntary petition in bankruptcy and were subsequently adjudged bankrupt. It is argued at no time did the bankrupts or the appellants give notice to the creditors of the bankrupts of the transfer or disposal as required by the Kansas Bulk Sales Law.

In *Joyce v. Armourdale State Bank*, 127 Kan. 539, 274 Pac. 200, it is held:

"Where a merchant borrows money, and to secure the same gives a chattel mortgage on his stock of goods and fixtures, and, finding himself unable to make the required payments, surrenders and delivers to the mortgagee all or a substantial portion of the goods and fixtures in compliance with the terms of the mortgage, it is such a disposal of the merchandise and fixtures as is contemplated to be within the meaning of the term 'sale and disposal' as used in the bulk-sales law and is a disposal otherwise than in the ordinary course of his trade or business as described in that law." (Syl. ¶ 1.)

There the time elapsed between the giving of the chattel mortgage and the taking of possession by the mortgagee was seven months. The stipulation showed there were a number of creditors of the merchant when the mortgage was executed; that they continued as

such; and that they and others were creditors when bankruptcy proceedings were instituted twelve months later.

G. S. 1949, 58-307 (now K. S. A. 58-307) provides:

"In the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto, and the right of possession."

In *Wyatt v. Duncan,* supra, the passing of title to the mortgagee upon the execution of a chattel mortgage was cited as material in disposing of a similar question under the Kansans Bulk Sales Law. This is not the law in many other jurisdictions.

The appellants rely upon *Faeth Co. v. Bressie,* 125 Kan. 425, 264 Pac. 1077, by quoting the following language:

". . . Since Walton had a valid mortgage on the equipment, the taking possession of the mortgaged property under the terms of the mortgage and selling it do not constitute a sale in violation of the bulk sales law. That law does not apply to sales made under judicial process (R. S. 58-104), and should not apply to a sale by a mortgagee under the provisions of a prior mortgage. The facts in this case differ from those in *Bank v. Davis,* 103 Kan. 672, 175 Pac. 972, for there the chattel mortgage, in the form of a bill of sale, was given by the merchant on his stock of merchandise, and the grantee or mortgagee was placed in possession of the property. The controversy there was between the grantee in this bill of sale and a then existing creditor of the merchant." (pp. 427, 428.)

The foregoing language is explained by the holding of the court as set forth in the syllabus of the case, as follows:

"The bulk sales law (R. S. 58-101 *et seq.*) does not apply to a sale by mortgagee, made under the terms of a valid mortgage, duly executed, delivered and recorded *prior to the creation of the debt sought to be enforced* under the provisions of the bulk sales law." (Syl.) (Emphasis added.)

We think a case material to a decision on this point is *Citizens State Bank v. Rogers,* 155 Kan. 478, 126 P. 2d 214. After the court there recognized the rule stated in *Joyce,* it said:

". . . Does the rule apply where the mortgagor retains possession of the goods and chattels? The bulk-sales law was designed to prevent the defrauding of creditors by the secret sale or disposal in bulk of substantially all of a merchant's stock of goods or fixtures pertaining thereto. (27 C. J. p. 873.) The evasion of the statute would be as easy where the possession was retained as where possession was surrendered at the time the mortgage was given. It is clear that the chattel mortgage before us is a disposal of the property within the meaning of the bulk-sales act, *and that it is void as to the claims of creditors of Rogers created and existing on or before the date of the filing of the chattel mortgage for record.*" (Emphasis added.) (pp. 479, 480.)

On the facts in the instant case there were no creditors of the bankrupts, other than the appellants, existing on the date of the

filing of the chattel mortgage of record. (This we must assume from silence of the record on the point, where the trustee has the burden of proof.) The Bulk Sales Law is designed to protect only those creditors existing as of the date the chattel mortgage which has been executed is recorded. The trustee in bankruptcy was not appointed until approximately two years after the recording of the chattel mortgage in the instant case, and he acquired no rights until the date of his appointment, long after the execution and recording of the chattel mortgage.

Under the foregoing facts the Kansas Bulk Sales Law did not apply to the transactions between the appellants and the bankrupts. The appellee in its brief contends "the taking of possession of the property was a 'transfer' within the meaning of section 60 (a) (2) [of the Bankruptcy Act] under the laws of Kansas because this was the act which 'so far perfected' appellant's mortgage 'that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the right of the trustee.' "

It has heretofore been stated that the language of Section 60 of the Bankruptcy Act must be read together with the language in Section 70 (a) of the Bankruptcy Act. Thus, if under the Bulk Sales Law there is a "sale and disposal" of the merchandise as of the date the chattel mortgage on such merchandise is recorded within the meaning of the Bulk Sales Law, a further reason is indicated why the appellees' argument lacks merit; and this is true, notwithstanding the fact that the rights of attaching or lien creditors which may intervene after the recording of the chattel mortgage on the merchandise, and prior to the mortgagee's taking actual possession thereof, are permitted under Kansas law to defeat the right of the mortgagee to the merchandise.

The judgment of the lower court is reversed.