No. 45,836

R. R. MITCHELL, as Trustee in Bankruptcy, *Appellee*, v. A. E. MOON, *Appellant*.

(478 P. 2d 203)

Opinion filed December 12, 1970.

*Harry A. Waite*, of Dodge City, argued the cause and was on the brief for appellant.

*R. R. Mitchell*, of Dodge City, argued the cause, and *Don C. Smith* and *David L. Patton*, of Dodge City, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action commenced by a trustee in bankruptcy to recover the value of a stock of merchandise taken by the defendant, A. E. Moon, from the bankrupt on February 15, 1965,

by virtue of a chattel mortgage executed between the bankrupt and the defendant on March 20, 1963, and filed of record in Ford County, February 15, 1965. The trustee sought to avoid the transfer of possession of the merchandise on the grounds the taking constituted a preference for the benefit of the defendant under the bankruptcy laws of the United States, and that the transfer of the merchandise was void as against creditors of the bankrupt under the provisions of the Bulk Sales Act. (K. S. A. 58-101.) The district court rendered judgment in favor of the trustee for $14,639.60, and the defendant perfected this appeal. We affirm.

Prior to and on March 20, 1963, Donald M. Weece, referred to as the bankrupt, operated an auction and used furniture business in Dodge City, under the name of "Don's Auction." Weece customarily maintained a stock of furniture and other personal property in excess of $30,000. On March 20, 1963, he borrowed $12,000 from the defendant. On the same day, Weece and his wife executed two chattel mortgages in favor of the defendant and his wife. The first chattel mortgage (the one out of which this appeal arises) was designated "Chattel Mortgage on Stock of Merchandise," and covered the entire stock of merchandise of Don's Auction. It specifically recited that Weece would at all times maintain a stock of merchandise in which the equity was worth a minimum of $30,000 over and above all liability with respect to such merchandise. It further provided:

"The parties agree that this mortgage agreement shall not be recorded as a chattel mortgage until and unless the Mortgagees give notice of their claim of a lien hereunder, at which time they may list the merchandise on hand, in which they claim a lien, and attach such list to this mortgage agreement, and record the same as notice to all subsequent purchasers or mortgagees.

"If the Mortgagees deem themselves not secure, they shall have the right to make claim of lien and take possession of the mortgaged assets as chattel mortgagees thereof.

"This instrument is intended as an inchoate chattel mortgage which may be converted to a perfect chattel mortgage by notice, and which will operate, as between the parties, upon the full stock of merchandise at any given time."

The second chattel mortgage likewise covered the entire stock of merchandise, and in addition it covered two trucks, office equipment, and household and personal items, which secured the note for $12,000 payable at the rate of $350 per month with interest. Attached thereto was a list of the numerous items specifically covered by the mortgage. This chattel mortgage was filed of record

in Ford County on April 8, 1963, and contained a notation on the reverse side of the list attached, "Approximately 30,000.00 Inventory as working stock Excluding Hotpoint Appliances."

On April 24, 1963, the defendant filed of record a partial release of the second chattel mortgage which released "all of the stock of merchandise inadvertently mentioned on the reverse side of the list attached to such chattel mortgage." Otherwise, the mortgage lien remained in full force and effect with respect to all items of personal property specifically described in the list.

The first chattel mortgage was not filed of record until February 15, 1965, when the defendant filed a notice of claim on the items of personal property set forth in the list attached to the notice of claim. The list consisted of eleven pages and contained 1102 specific items of merchandise and others identified only as miscellaneous items.

On February 15, 1965, the date the first chattel mortgage was recorded, Weece had various other creditors beside the defendant. He was in "terrible financial shape" and could not continue his business—it simply had to be liquidated.

On the same day, February 15, 1965, the defendant took possession of the listed stock of merchandise and held a sale as in foreclosure of the chattel mortgage. He bid $10,000 for all of the merchandise listed, which was the highest bid, and he commenced selling the merchandise. He continued selling the merchandise until a flood on the Arkansas River on June 19, 1965, damaged and destroyed all he had left. He made no attempt to comply with 58-101, referred to as the Bulk Sales law.

On May 8, 1965, Weece was adjudged a bankrupt. On June 8, the appellee, R. R. Mitchell, qualified as trustee in bankruptcy. On February 8, 1967, the trustee commenced this action, alleging a conversion of the stock of merchandise and prayed for judgment for the value thereof. He alleged that the transfer of possession of the stock of merchandise constituted a voidable preference under the Bankruptcy Act, and was a violation of the Bulk Sales law.

The defendant's answer denied any preference, or that the foreclosure of the chattel mortgage was void as to the creditors of Weece. He demanded a jury trial on all issues of fact.

At a pretrial conference in November, 1967, the district court determined that the transfer of possession of the stock of merchandise to the defendant on February 15, 1965, violated the provisions of the Bulk Sales Act, and that the chattel mortgage

in favor of the defendant was, therefore, void as against the creditors of Weece. While the trustee alleged a preference had been granted the defendant by Weece in contravention of the Bankruptcy Act, the district court made no finding or conclusion on the point, nor has it since been referred to, and we assume the contention has been abandoned.

On November 20, 1968, the trustee's motion for appointment of a master came on for hearing. The trustee appeared in person and the defendant appeared by his counsel, Mr. Harry A. Waite. The district court found that the only issue of fact remaining undecided was the value of the various and sundry items of merchandise of which the defendant took possession on February 15, 1965, and that the ends of justice would be measurably advanced by the appointment of a master to determine the value of such various and sundry items. The defendant made no objection to the appointment of a master. Counsel for both sides were contacted by the master appointed by the court and the parties stipulated and agreed that the hearing would be held in Dodge City, on December 11, 1968. At the hearing, the trustee presented evidence of the value of the merchandise through the testimony of Weece and the defendant. Weece qualified as an expert witness, and to identify the various 1102 items, he used a duplicate of the list of items attached to the defendant's notice of claim, referred to as Exhibit No. 1. Weece had placed a value opposite each item. After a few items were testified to, the following stipulation was made:

"Mr. Waite: It is stipulated by and between the parties that plaintiff's Exhibit No. 1, may be admitted in evidence, and the figures thereon extended as to the value of the items would be the testimony of Mr. Don Weece as to the value of the items contained on the list."

Counsel for the defendant cross-examined the trustee's witnesses, but no evidence of value on behalf of the defendant was offered. The value of the merchandise was shown to be $14,639.60 as of February 15, 1965.

The master filed his report on December 19, 1968, before a transcript of the evidence was filed, and after objection by the defendant, the master filed a similar report on January 24, 1969, together with a transcript of proceedings. Both reports found the value of the merchandise to be $14,639.60.

The trustee filed a motion to adopt the report of the master,

and further moved that after the adoption of the report, the court enter judgment for the trustee and against the defendant in the sum of $14,639.60 and costs. The defendant's motion in opposition to the adoption of the master's report alleged he had requested a jury trial on all issues including the value of the merchandise, and asked that the court not adopt the report. The motion was overruled, and judgment was entered on the master's report in favor of the trustee in the sum indicated.

It is first contended the district court erred in its conclusion the chattel mortgage from Weece to the defendant was void as to the creditors of Weece. The point is not well taken. By the terms of the chattel mortgage it was not to be recorded until the mortgagees gave notice of their claim, and when recorded, it was "notice to all subsequent purchasers or mortgagees." The instrument was intended to be an "inchoate" or imperfect chattel mortgage until converted by notice and recording. As indicated, the instrument was dated March 20, 1963, but was not recorded until February 15, 1965, the same day the defendant took possession of the merchandise. An examination of the records in the office of the register of deeds would have shown the defendant was not claiming a mortgage on the stock of merchandise.

The district court's finding that Weece had various other creditors on February 15, 1965, is not disputed, nor is its finding that the defendant made no attempt to comply with 58-101, known as the Bulk Sales law.

We are of the opinion the recording of the chattel mortgage on February 15, 1965, and the taking of the stock of merchandise on the same day, without notice to other creditors, was void as against the claims of such creditors. (58-101.) *Citizens State Bank v. Rogers*, 155 Kan. 478, 126 P. 2d 214, was an action to foreclose a chattel mortgage covering fixtures pertaining to a business. It was conceded that notice was not given to the creditors of the mortgagor. Some of those creditors contended that since the mortgagee failed to comply with the Bulk Sales law, the mortgage was void as to them. In deciding the question in the affirmative, this court held:

"Where the owner executes a chattel mortgage covering substantially all of a stock of goods or fixtures, retaining possession of the mortgaged property, the effective date of the disposal of the property is the time when such chattel mortgage is placed of record. Such mortgage is void as to claims of creditors accrued on or before the date of the recordation of the mortgage." (Syl. ¶ 2.)

In the opinion it was said:

". . . The bulk-sales law was designed to prevent the defrauding of creditors by the secret sale or disposal in bulk of substantially all of a merchant's stock of goods or fixtures pertaining thereto. (27 C. J. p. 873.) The evasion of the statute would be as easy where the possession was retained as where possession was surrendered at the time the mortgage was given. It is clear that the chattel mortgage before us is a disposal of the property within the meaning of the bulk-sales act, and that it is void as to the claims of creditors of Rogers created and existing on or before the date of the filing of the chattel mortgage for record." (l. c. 479, 480.)

The defendant's reliance on *Quinn, Trustee v. Voorhees*, 194 Kan. 574, 400 P. 2d 986, is not well founded. There, a chattel mortgage covering the stock of merchandise and accounts receivable of the mortgagors was *recorded* on February 16, 1961. Almost two years later, and on December 31, 1962, the mortgagee took possession of the entire stock of merchandise and accounts receivable. On January 7, 1963, the mortgagors filed a voluntary petition in bankruptcy and were subsequently adjudged bankrupts. There were no creditors of the bankrupts, other than Voorhees, existing on the date the chattel mortgage was filed of record. This court held:

"Where a chattel mortgage covering a stock of merchandise, including after-acquired property, has been executed and recorded, and the mortgagors retain possession of the mortgaged property, *the effective date of the disposal of the property within the meaning of the Kansas Bulk Sales Law* (G. S. 1949, 58-101, now K. S. A. 58-101) *is the time when such chattel mortgage is placed of record."* (Syl. ¶ 3.) (Emphasis supplied.)

In the instant case, the defendant was lurking in the shadows, inducing credit to be extended to Weece by executing the partial release of the stock of merchandise covered by the second chattel mortgage. Thereafter, and at a time Weece was insolvent and his business had to be liquidated, the defendant emerged from the shadows, filed his "inchoate" chattel mortgage, took possession of the stock of merchandise, and purchased the same. This occurred when Weece had various other creditors. What the defendant did amounted to a disposal of the merchandise as is contemplated to be within the meaning of the term "sale and disposal" as used in the Bulk Sales law, and was a disposal otherwise than in the ordinary course of Weece's trade or business.

The mortgage here was not recorded prior to the creation of the debts sought to be enforced by the trustee. Section 70 (*e*) of the Bankruptcy Act (11 U. S. C. A., § 110 [*e*]) gives the trustee what-

ever rights any creditor of the bankrupt with a provable claim has under state or federal law to attack a transaction which is fraudulent and voidable for any reason by such creditor. Since the chattel mortgage was void as to creditors existing at the time the chattel mortgage was filed of record, it was void against the trustee in bankruptcy. (*Bussert v. Quinlan*, 267 F. 2d 219.)

The defendant contends the district court erred in entering judgment upon the master's report on an issue which should have been submitted to a jury. As previously noted, the defendant demanded a trial by a jury be had on issues of fact. He argues there is nothing in the record to show he ever lost his right to a jury trial, except the district court erred in failing to give effect to his legal right. He also argues the district court erred in the appointment of a master.

As indicated, when the master was appointed, the defendant was present by counsel and made no objection to the appointment, either at that time, or when the case was heard at Dodge City. When the trustee's evidence was being presented, plaintiff's Exhibit No. 1 was admitted in evidence by stipulation of the defendant. The defendant cross-examined the trustee's witnesses, and at the conclusion of the trustee's evidence, he offered no evidence of value on his behalf. Thereafter, both the trustee and the defendant announced the matter was submitted to the master for his determination.

The defendant's objection came only after he was aware the decision of the master as to the value of the merchandise was not to his liking. He may not complain of rulings or matters to which he consented, or take advantage of any error upon appellate review which he invited, or in which he participated. (*Elwood-Gladden Drainage District v. Ramsel*, 206 Kan. 75, 476 P. 2d 696.)

Moreover, K. S. A. 60-239 (*a*) (1) provides that when a trial by a jury has been demanded, the trial of all issues so demanded shall be by jury unless the parties by written stipulation, or oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury. We think counsel's stipulation into the record during the trial before the master that plaintiff's Exhbit No. 1 be admitted in evidence was, if not expressly, at least by implication, a stipulation in open court to proceed to trial on the issue of value without a jury, notwithstanding his previous demand for trial by jury on all issues. The district court was of the opinion that a reference to a master was proper. It found that the ends of

justice would be measurably advanced thereby, and that the issue of fact involved an examination of complex and voluminous accounts of some 1102 items. By counsel's acquiescence in the order, it must be presumed the defendant was of the same opinion. (60-253 [b].)

It should further be noted that when the defendant objected to the master's report, the court had the report before it and it clearly showed there was nothing to submit to a jury. At this point there was no question of fact that had not been resolved, and there was nothing for a jury to decide. The defendant's objection made when the master's report was filed was too late. In *Stanley v. Weston*, 92 Kan. 317, 140 Pac. 878, it was said:

"Complaint is made of the order of reference, but it does not appear that the defendants objected when the order was made, nor before or during the trial, although appearing and participating therein. An objection made when the report was filed was too late. The case involved an accounting of sales of crops of different kinds at various times, supposed at the time to be worth $5000. The court believed a reference to be proper, and by their acquiescence it must be presumed that the parties were of the same opinion." (l. c. 320, 321.)

The defendant has not made it affirmatively appear the district court erred in any point advanced for appellate review, and the judgment of the district court is affirmed.