NOT DESIGNATED FOR PUBLICATION

No. 117,545

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NPIF2 KANSAS AVENUE, LLC,
*Appellee*,

v.

BH INVESTMENTS, LLC,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed April 27, 2018. Affirmed in part and vacated in part.

*Justin Nichols*, of Kutak Rock LLP, of Kansas City, Missouri, and *Mark A. Samsel*, of Lathrop Gage LLP, of Overland Park, for appellant.

*Jason S. Leiker*, of Levy Craig Law Firm, of Kansas City, Missouri, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: BH Investments, LLC (BH) appeals the district court's granting of an irrevocable license. Based on how the buildings are constructed on the properties, both parties have been utilizing each other's property to achieve the best use of their respective property. Despite this fact, they have been unable to address their shared use of the properties through an agreement. The district court found a license existed for each property owner to use the other parties' property. The district court also granted an injunction restricting both parties from revoking the license until one of them sold their property.

1

We find the district court correctly found a mutual license existed for use of the other parties' property. As to the injunction, we find it was issued sua sponte and without notice to the parties. An injunction without notice cannot stand and must be vacated. Affirmed in part and vacated in part.

FACTS

NPIF2 Kansas Avenue, LLC (NP) filed a petition seeking quiet title and declaratory judgment against BH Investments (BH). NP and BH owned separate parcels of property that adjoin each other and, prior to their individual ownership, the property had been owned as a single property by the City of Kansas City. NP claimed it has an implied easement across BH's property "including the driveways, parking lots, and truck court for purposes of ingress and egress." NP requested quiet title as to the implied easement and declaratory judgment against BH. In its answer and counterclaim, BH raised issues of quiet title, trespass, and a declaratory judgment against NP.

NP is the fee simple owner of 5100, 5150, 5200, and 5250 Kansas Avenue in Kansas City. BH is the fee simple owner of 5300 Kansas Avenue. There has been no common ownership of the properties since September 18, 1987. Together, the BH and NP properties consist of seven warehouse buildings that surround a shared truck court, driveway, and parking lot. An aerial photograph of the properties is attached at the end of the opinion for the reader's reference.

The NP property is the eastern complex of four buildings and the BH property is the western complex of three buildings. All seven buildings are connected and share a fire suppression system with separate parts located on each property. The electric fire pump is located on BH's property and the secondary diesel pump and the water tower for the system is on NP's property. The property line separating the NP and BH properties runs through the shared truck court, driveway, and parking lot. Both properties each

2

contain a curb cut from Kansas Avenue with unrestricted access to either property: The current placement of the buildings on the adjacent lots led to a single shared asphalt parking lot, truck court, and two shared curb cuts for access.

Kansas Avenue sits in front of the properties running east and west. A concrete lane divider separates the westbound and eastbound lanes. The Fleming Company (Fleming) began occupying all of the buildings on both properties as a tenant in 1994. Fleming connected all of the buildings in the complex through "master links." Fleming crossed mechanical systems as needed between the two properties, including the aforementioned fire suppression system. Fleming closed the NP Property curb cut and placed a guard shack at the BH property curb cut entrance. Later when upgrading Kansas Avenue, the Kansas Department of Transportation (KDOT) closed off the median cut through the concrete lane divider that went to the NP property. When Fleming vacated the properties, NP property's previous owner attempted to reopen both the median cut and the curb cut. The original curb cut was reopened, but the request to reopen the median cut was denied by the federal highway department. Now, trucks entering the NP property can only come from the west and must leave traveling west. Trucks leaving the NP property going east must exit through the BH curb cut. Additionally, the NP property can only be entered by trucks traveling east on Kansas avenue through the BH curb cut.

Until recently, Comprehensive Logistics, Inc. (CLI) was the tenant of the entire BH property and part of the NP property. CLI trucks generally entered from the west and used the NP curb cut. CLI has now vacated both properties. Kansas City Steak Company (KCS) is a tenant of NP. KCS trucks utilize both the NP and BH curb cuts and, when entering through the NP curb cut, utilize "the truck court located on the BH Property to turn around." KCS trucks must utilize BH's property to back to the doors on the NP property. Neither NP nor BH has restricted the truck traffic of the other property owner when on either property.

3

As discovery progressed and the pretrial order was prepared, there was no discussion by either party that the petitioned for easement was, in fact, a license. A bench trial occurred. At the end of the trial, when questioned by the district court regarding trespass by both parties absent an easement, BH stated the following:

"I would say I would view it, there has been, and for lack of a better way of putting it, a license the parties have given one another to go across each other's property. If one of them has licenses irrevocable, if one of [the] property owners was to choose to say you can't come across our property any more, that would be the point at which there was a change in our view that that's been a right we've had all along."

This appears to be the first time either party suggested a license existed for the mutual benefit of each party. Earlier in the trial, Nathaniel Hagedorn, NP's Chief Operating Officer, was asked about the existence of a license. Hagedorn stated he found an easement was the only way for the property to function and denied the existence of a license.

BH then raised the issue again in its proposed findings of fact and conclusions of law following the bench trial. BH claimed its agreement with NP regarding the shared areas and systems of the buildings amounted to a revocable license. BH reviewed the caselaw surrounding licenses and argued a revocable license was applicable. BH's prayer for relief included finding no easements but alternatively finding a revocable license existed.

In its decision, the district court first found there was insufficient evidence for a prescriptive easement, noting there was never a claim for one. Regarding an easement by strict necessity, the district court similarly found there was insufficient evidence for one, and no claim was ever made for one. Looking to an implied easement as NP petitioned for, the district court held NP failed to present any evidence concerning "whether the use giving rise to the easement was in existence at the time of the conveyance," or whether

4

"at the time of the severance the easement was necessary for the proper and reasonable enjoyment of the dominant tract." The district court denied NP's implied easement request.

The district court accepted BH's alternative finding a license existed between NP and BH. The district court cited five factors to support a need for a license:

- "a necessity in order for each party to utilize its property";
- "a concern for the safety of those on the property and public safety of those utilizing the adjoining roads and highways, which safety would be jeopardized if either tenant's vehicles had to alter its ability to use Kansas Avenue";
- "if such a license was not in place, the burden upon [NP] would cause a disproportionate expense to allow for the use of its property";
- "that [NP] and [BH] enjoy reciprocal benefits from the use of each other's property"; and
- "the formalization of the license is based upon equitable relief."

The district court found the license applied to the fire suppression system, the curb cuts, the parking lot, the truck court, and the paved area between the curb cuts. Lastly, the district court, "through its power of injunctive relief," found the license could not "be revoked by either party unless and until a sale of their respective property by the plaintiff or the defendant," and the district court retained "jurisdiction to enter further injunctive relief as necessary."

ANALYSIS

*A license exists.*

BH claims the district court erred by awarding an irrevocable license that neither party requested and "exceeded its jurisdiction." BH contends licenses were not mentioned in the pretrial order, and the district court is precluded from deciding issues outside of the pretrial order. BH stresses NP never brought up the issue of a license. However, BH does acknowledge they raised the license issue both at trial and in the proposed findings of fact and conclusions of law. BH claims by considering the issue of an *irrevocable* license, the district court exceeded its jurisdiction.

In its brief, BH argues it raised the possibility a *revocable* license existed and the district court improperly took the next step by creating an irrevocable license. Further, BH notes it stated in its proposed findings of fact and conclusions of law that anything past a revocable license "would be reversible error." BH contends the district court effectively created an easement and called it a license, and the decision has unintended consequences. BH also claims there was no evidence presented by NP to support a finding for an irrevocable license. BH does concede evidence of a revocable license was presented and further admitted that point during oral argument.

NP responds the issue of whether a license existed was presented to the district court, noting BH raised the issue. NP contends the original purpose of the litigation was to determine the rights both NP and BH had in the shared areas. NP thought an implied easement existed, while BH thought an implied license existed. NP contends the district court's findings supported an implied license. NP claims the pretrial order "was modified to conform to the evidence and issues," although not formally done by the district court. NP also argues when BH raised the license issue, it offered the district court an alternative way to resolve the issue outside of the pretrial order. Next, NP contends the

6

district court's holding should be upheld so long as it is right, even if for the wrong reasons. Lastly, NP maintains there was sufficient evidence to support the district court's finding of an irrevocable license.

In its reply brief, BH contends it "did not acquiesce at trial to a judgment creating a license," and the district court was without jurisdiction to adjudicate a claim that was absent from the pretrial order. BH further argued NP did not present evidence to support the district court's order for an irrevocable license.

"Generally, a party cannot invite error and then complain of the error on appeal." *Water District No. 1 of Johnson County v. Prairie Center Development, L.L.C.*, 304 Kan. 603, 618, 375 P.3d 304 (2016). Put another way, "[w]here counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous." *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 451-52, 370 P.2d 78 (1962).

The district court found a license existed between NP and BH for use of the properties by each other. The district court found the license applied to the fire suppression system, the curb cuts, the parking lot, the truck court, and the paved area between the curb cuts. Lastly, the district court, "through its power of injunctive relief," found the license could not "be revoked by either party unless and until a sale of their respective property by the plaintiff or the defendant," and the district court retained "jurisdiction to enter further injunctive relief as necessary."

BH was the sole party to raise the issue of a license. First, at the end of the trial, upon questioning by the district court regarding trespass by both parties absent an easement, BH stated the following:

> "I would say I would view it, there has been, and for lack of a better way of putting it, a
> license the parties have given one another to go across each other's property. If one of

7

them has licenses irrevocable, if one of [the] property owners was to choose to say you can't come across our property any more, that would be the point at which there was a change in our view that that's been a right we've had all along."

Not only did BH raise the issue at the close of evidence, it went on to restate the alternative finding again in its proposed findings of fact and conclusions of law. BH reiterates its current agreement with NP regarding the shared areas and systems of the buildings amounted to a revocable license. BH reviewed the caselaw surrounding licenses and argued a revocable license was applicable. BH's ultimate prayer for relief included finding no easements, but alternatively finding a revocable license existed.

BH attempts to walk back its request for a license by distinguishing its request as a revocable license, and the court's ultimate judgment as an irrevocable license. This, however, is not necessarily the case. The district court was clear the license could in fact "be revoked by either party . . . [upon] a sale of their respective property." While this may not be revocable in the sense BH seemingly wanted, it is nonetheless revocable. An irrevocable license is generally attached to the property and passes with the property, something this license clearly does not do. See *McKim v. Carre*, 72 Kan. 461, 83 P. 1105 (1905); *Shelor v. KDL, Inc.*, No. 104,860, 2011 WL 2637463, *1 (Kan. App. 2011) (unpublished opinion); 25 Am. Jur. 2d, Easements and Licenses § 109. Furthermore, if the license had been irrevocable, the district court would not have found it necessary to utilize "its power of injunctive relief" to prevent the revocation of the license "by either party . . . [upon] a sale of their respective property." Absent the district court's injunctive relief, the license is certainly revocable.

It is unlikely the district court would have ever reached the license issue if not raised by BH. Prior to trial, there was no suggestion by either party the shared spaces constituted a license. BH was the one to inject the issue of a license into the litigation. "A defendant may not complain of rulings or matters to which he has consented, or take

advantage of error upon appellate review which he invited, or in which he participated." *Mitchell v. Moon*, 206 Kan. 213, Syl. ¶ 3, 478 P.2d 203 (1970). BH invited the disposition of this case and is precluded from arguing on appeal against the district court's order finding a license existed.

*Injunctive Relief Granted in Error*

The injunctive relief imposed by the district court lacked notice to either party. BH also maintains the district court failed to comply with K.S.A. 60-902, K.S.A. 60-905, and K.S.A. 2017 Supp. 60-906. First, BH contends the district court did not have a verified pleading, and there was no evidence BH had restricted the shared areas as required by K.S.A. 60-902. BH next claims no bond was posted as required by K.S.A. 60-905. Finally, BH argues the district court failed to support the injunction with facts and did not specify a time frame pursuant to K.S.A. 2017 Supp. 60-906.

NP responds the district court had "inherent power to issue injunctive relief." NP, relying upon *Kansas East Conference of United Methodist Church, Inc. v. Bethany Medical Center, Inc.*, 266 Kan. 366, 969 P.2d 859 (1998), argues the district court can grant an injunction if it gives reasons for its decision while utilizing its discretionary authority. NP does acknowledge the Supreme Court in *Kansas East* ultimately reversed the injunction but distinguishes it from the facts of this case. In its reply brief, BH responds its due process rights were violated through the district court's award of injunctive relief, citing *Kansas East*. BH's argument is more persuasive.

Appellate courts review the grant or denial of injunctive relief for an abuse of discretion. *Downtown Bar and Grill v. State*, 294 Kan. 188, 191, 273 P.3d 709 (2012). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302

9

Kan. 66, 74, 350 P.3d 1071 (2015). In its brief, BH fails to identify the correct standard of review, arguing our review is unlimited. However, its arguments appear to suggest both an error of law and an error of fact by the district court.

*Kansas East* addresses the need for notice and is quite analogous to this case. NP's efforts to distinguish it fail. *Kansas East* is dispositive of this issue. In the *Kansas East* case, Kansas East Conference of the United Methodist Church filed for a declaratory judgment to dissolve Bethany Medical Center and distribute Bethany's assets to the church. Following a bench trial, the district court found "Bethany should not be dissolved" and sua sponte "issued a permanent injunction prohibiting Bethany from amending its articles of incorporation to remove the Conference as the designated recipient of Bethany's assets in the event of its dissolution." 266 Kan. at 366-67.

The Kansas Supreme Court noted there were no express statutory provisions for issuing a permanent injunction and stated the following:

"[A]n application for injunctive relief inevitably will result in notice and an opportunity to be heard before a temporary injunction may be imposed and, therefore, certainly before a permanent injunction would be ordered. Thus, the absence of express statutory requirements for notice and hearing simply reflects the absence of a need to spell out requirements that ought to be fulfilled during the orderly processing of the case as a whole. In the present case, there was no application for injunctive relief, and the possibility of injunctive relief was not considered in the ordinary course of the proceedings. The statutory scheme was bypassed by the trial court's *sua sponte* imposing an injunction as a part of the final judgment. Contrary to the Conference's contention, the statutes do not authorize issuance of a permanent injunction without notice to or opportunity for the enjoined party to be heard. In addition, the Conference's argument ignores the constitutional requirement of notice and an opportunity to be heard." 266 Kan. at 381-82.

10

The Supreme Court found the absence of notice or an opportunity to be heard before a permanent injunction was imposed on an individual was a violation of the individual's due process rights. 266 Kan. at 382, 384.

Here, the district court raised the injunctive relief issue sua sponte. It was not raised until the district court issued its decision; thus, BH had neither the opportunity to be heard nor notice of the action. This was a violation of BH's due process rights, an error of law, and consequently, an abuse of the district court's discretion. See *Kansas East*, 266 Kan. at 382, 384; *Wiles*, 302 Kan. at 74. The district court's decision, so far as it relates to the grant of injunctive relief, is vacated.

Affirmed in part and vacated in part.

